**In re UNITED STATES DEPARTMENT OF DEFENSE, Petitioner.**

**No. 88–5044.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 11, 1988.

Decided June 3, 1988.

Mark B. Stern, Atty., Dept. of Justice, with whom Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., was on the petition for a writ of mandamus, for petitioner.

David L. Sobel, with whom Joseph N. Onek, Washington, D.C., was on the response to the petition for a writ of mandamus, for respondent.

Before WALD, Chief Judge, and ROBINSON and STARR, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

Dissenting opinion filed by Circuit Judge STARR.

WALD, Chief Judge:

The Department of Defense ("DOD") petitions here for a writ of mandamus directing District Judge Louis F. Oberdorfer to revoke the appointment of a special master in this Freedom of Information Act ("FOIA") case. Because we conclude that Judge Oberdorfer did not abuse his discre-

1. FOIA is set forth at 5 U.S.C. § 552.

2. According to an affidavit submitted to the district court by the major general in charge of reviewing FOIA requests lodged with DOD on special operations matters, the documents at issue "contain the actual working files for the planning and review of the rescue mission of 24 April 1980, as well as the following intelligence efforts to determine the location of the hostages and monitor the political efforts to obtain their

**233**

tion in appointing the master, we deny the petition.

## I. BACKGROUND

This petition arises from a lawsuit brought under FOIA[1] by the *Washington Post* and staff writer R. Scott Armstrong seeking to compel production of documents relating to attempts to rescue United States hostages in Iran in 1980. DOD withheld in whole or in part approximately 2,000 documents comprising approximately 14,000 pages. It premised its withholding of almost all of these documents on FOIA's "national security" exemption. That exemption covers matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Because it deemed highly sensitive much of the information in the withheld documents, DOD submitted to the district court not only an unclassified document index, but also a classified index providing in greater detail document descriptions and DOD's justifications for withholding.[2]

On June 30, 1987, following the submission of these public and *in camera* document indexes, Judge Oberdorfer announced that he was considering the appointment of a special master to review the documents in question. The *Post* and Armstrong endorsed the idea and suggested several potential appointees. DOD opposed such an appointment. It proposed instead to prepare a random sample of the withheld documents, based upon which the district court could judge *in camera* the applicability of the claimed exemptions.

release." The documents include "handwritten notes, intelligence messages, draft option papers, and the military plans for the mission." *See* Declaration of Maj. Gen. W.H. Rice at ¶ 4 (Oct. 19, 1985). As such, they contain information that "provides a detailed description of the training, planning, operational concepts, weapons systems, and communications systems employed in the preparation, and execution of the rescue mission." *Id.* at ¶ 14.

On December 14, 1987, Judge Oberdorfer announced that he would appoint a special master. In a three-page notice to counsel, he rejected DOD's random sampling proposal. Judge Oberdorfer explained:

it is difficult to clear the Court's clerks and other staff to enable them to perform their usual function with respect to a process such as sampling. The defendant presumably contemplates that its personnel would select the samples, if for no other reason, because they have the clearance necessary for access to the original classified documents. However, the integrity of sampling by the government has been authoritatively questioned. *See Lame v. United States Dept. of Justice*, 654 F.2d 917, 928 n. 11 (3d Cir.1981), cited with approval in *Weisberg [v. United States Dept. of Justice ]*, 745 F.2d [1476] at 1490 [D.C.Cir.1984]. Nor is a random sampling particularly appropriate for the circumstances here. *Compare Meeropol v. Meese*, 790 F.2d 942, 956–59 (D.C.Cir.1986).

The best solution, Judge Oberdorfer's notice concluded, was to appoint as master "a person who holds, or has recently held, sufficient clearance to have access to the documents," and to charge that party with "developing the sample and summarizing to the Court the arguments that each party has made, or could make with respect to the exemptions claimed by defendant." Under this arrangement,

[t]he Court's Article III role would be preserved, and indeed enhanced beyond that performed by the Court in an *in camera* review: adjudication of the exemptions claimed would be based on the samples selected, an appraisal of the method used by the special master to select the samples, and consideration of the arguments pro and con summarized for the Court by the master together with any additional arguments suggested by the parties. The master will make no recommendation.

Judge Oberdorfer also announced his tentative intention to appoint as master Kenneth C. Bass III, a Washington, D.C. attorney who was previously counsel for intelligence policy in the Department of Justice and who in that capacity held top-secret security clearance.

On January 15, 1988, the judge issued an order making Bass' appointment official. He reasoned in the order that there was an indisputable need for careful *in camera* consideration of such highly sensitive documents, because "the Court and the plaintiff will be denied the truth-testing benefits of an adversary proceeding." Given the practical difficulty of the judge or his law clerk perusing all 2,000 documents, and the judge's conclusion based upon his several years experience with the case that random sampling would not be appropriate in this case, a "necessity [existed] of obtaining the services of an independent person who is skilled and experienced in national security matters (including the control of sensitive documents)." The order charged Bass with selecting a "representative sample" of the withheld documents and with summarizing the arguments for and against granting each claimed exemption.[3] Four weeks later, DOD filed this petition for a writ of mandamus, to which plaintiff Armstrong has responded by supporting the reference to a master.[4] We now turn to the propriety of granting the requested writ.

## II. DISCUSSION

■ The writ of mandamus is "an extraordinary remedy, to be reserved for extraordinary situations." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, —— U.S. ——, ——, 108 S.Ct. 1133, 1143, 99 L.Ed.2d

---

**3.** DOD does not challenge Bass' personal qualifications or integrity. *See* Petition for a Writ of Mandamus at 21 n. 14. With regard to Bass' compensation, the order stated that the court expected that he would be paid at the hourly rate at which he normally bills clients, plus reimbursement for expenses according to the billing practices of his firm. It further stated that the party "which does not substantially

prevail" would supply the larger share of Bass' compensation. *See* Fed.R.Civ.P. 53(a) (authorizing court to fix masters' compensation).

**4.** *See* Response to Petition for a Writ of Mandamus at 1. According to Armstrong, the *Post* "has indicated that it no longer seeks access to the material at issue here." *Id.* at 1 n. 1.

296 (1988). Historically, the writ has been used in the federal courts "only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967) (*quoting Roche v. Evaporated Milk Association*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943)). The Supreme Court has offered several reasons for thus limiting the invocation of mandamus to "exceptional cases where there is clear abuse of discretion or 'usurpation of judicial power.'" *La Buy v. Howes Leather Co.*, 352 U.S. 249, 257, 77 S.Ct. 309, 314, 1 L.Ed.2d 290 (1957) (quoting *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953)). First, mandamus actions have "the unfortunate consequence of making the [district court] judge a litigant, obliged to obtain personal counsel or to leave his defense to one of the litigants [appearing before him] in the underlying case." Second, "particularly in an era of crowded dockets, it is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation." Third, Congress, ever since the Judiciary Act of 1789, has signalled its desire that appellate review be postponed until a trial court has rendered a final judgment. Issuing a writ of mandamus "in anything less than an extraordinary situation would run the real risk of defeating" the policies Congress sought to further. *Kerr v. United States District Court*, 426 U.S. 394, 402–03, 96 S.Ct. 2119, 2123–24, 48 L.Ed.2d 725 (1976) (describing mandamus remedy as "a drastic one") (citations omitted).

In light of the extraordinary nature of the requested form of relief, the burden falls upon DOD here to show that its right to issuance of the writ is "clear and indisputable." *Kerr*, 426 U.S. at 403, 96 S.Ct. at 2124. DOD's argument that it can show such a clear and indisputable right here turns on its assertion that although Feder-

al Rule of Civil Procedure 53(b) requires an "exceptional condition" to exist before a judge can appoint a master, no such condition exists in this case. The rule states:

> A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account and of difficult computation of damages, a reference shall be made only upon a showing that some exceptional condition requires it.

Fed.R.Civ.P. 53(b).

Although Rule 53(b) does impose significant limits on when a trial judge can refer matters to a master, we cannot agree that Judge Oberdorfer abused his discretion in making the appointment in this case. Our circuit has recognized the propriety under Rule 53(b) of designating masters in certain exceptional FOIA cases. In *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir. 1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), we surveyed the options available to a judge overseeing a FOIA lawsuit. In cases where a judge, after considering the option of himself reviewing indexed documents, concludes that dealing with "the raw material of an FOIA lawsuit may still be extremely burdensome," we wrote,

> it is within the discretion of the trial court to designate a special master to examine documents and evaluate an agency's contention of exemption. This special master would not act as an advocate; he would, however, assist the adversary process by assuming much of the burden of examining and evaluating voluminous documents that currently falls on the trial judge.

484 F.2d at 828. *See also Meeropol v. Meese*, 790 F.2d 942, 961 (D.C.Cir.1986) (noting in FOIA case that "the decision whether to appoint a master lies within the discretion of the trial court," and therefore refusing to appoint a master where the trial court had opted not to).[5]

---

**5.** Insofar as they require the performance of substantial organizational chores before a judge can meaningfully review a mass of classified documents, certain FOIA cases would seem to qualify for "exceptional case" treatment. The burden of sorting and categorizing sheafs of

In our view, this case features a very special set of circumstances which meet the "exceptional condition" test of Rule 53. It involves a FOIA claim with respect to which the judge has no access to impartial expert witnesses or other features of the adversary process in order to assist him in making his decision about disclosure. It also involves a massive collection of 14,000 pages which must be sifted through. As Judge Oberdorfer's response to the mandamus petition pointed out, he had only recently used his law clerks for several months to assist him in a "much less technical and sensitive FOIA case," *see Nishnic v. United States Department of Justice*, 671 F.Supp. 771 (D.D.C.), *aff'd*, 828 F.2d 844 (D.C.Cir.1987); *Nishnic v. United States Department of Justice*, 671 F.Supp. 776 (D.D.C.1987), and presumably would have done so again, except for the fact that to do so in this case would have required that they obtain special security clearances, a time-consuming process in itself. The judge also made a judgment based upon several years experience on the case that random sampling would not be an appropriate technique in this instance. He therefore resorted to appointment of a master to ensure a prompt, thorough, and independent look at all the documents. Apart from our assumption that Rule 53 itself clearly envisions considerable discretion in the district court in deciding when an "exceptional condition" exists, we find the special combination of circumstances here fits well within that term. *See also* Fed.R. Civ.P. 53 *advisory committee note* ("such masters may prove useful when some special expertise is desired").

Moreover, in both his notice to counsel and his order appointing the master, Judge Oberdorfer carefully cabined the master's authority. He expressly forbade the master from making any recommendations, charging him instead with the more limited task of developing a representative sample and summarizing each party's arguments or potential arguments. In this respect, this case is not at all akin to those few in which courts have issued writs of mandamus revoking masters' appointments as outside of a trial court's discretion. On each such occasion, the trial court's error was in delegating ultimate decisional authority to the master.

Thus, in the leading case of *La Buy v. Howes Leather Co.*, 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), relied on here by DOD, the Supreme Court overturned a district court's wholesale reference to a master of two full civil antitrust trials. The Court, rejecting the district judge's argument that calendar congestion and issue complexity constituted "exceptional circumstances," noted that the use of masters is " 'to aid judges in the performance of specific judicial duties as they may arise in the progress of a cause,' and not to displace the court." 352 U.S. at 256, 77 S.Ct. at 313 (citations omitted). It wrote that the litigants were entitled to "trial before a regular, experienced trial judge rather than before a temporary substitute appointed on an *ad hoc* basis." *Id.* at 259, 77 S.Ct. at 315. *See also In Re: United States*, 816 F.2d 1083, 1089 (6th Cir.1987) (district judge's reference to master of "dispositive[ ] pretrial motions" was error, even though need for pretrial management "may be persuasive as to the reference of discovery matters"); *In Re: Armco, Inc.*, 770 F.2d 103, 105 (8th Cir.1985) (upholding reference to master in complex environmental case insofar as he was granted broad authority to supervise pretrial matters, but issuing writ revoking master's

documents to facilitate testing them for compliance with FOIA's exceptions is a close cousin to the task of overseeing complex document production, an instance of the "unusual discovery" that has been widely recognized as constituting an exceptional condition within the ambit of Rule 53(b). *See* 9 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2605 at 791 (quoted in *Liptak v. United States*, 748 F.2d 1254, 1257 (8th Cir.1984), and *In Re: Armco, Inc.*, 770 F.2d 103, 105 (8th Cir.1985)); *see also In Re: United*

*States*, 816 F.2d 1083, 1089 (6th Cir.1987) (reference of pretrial discovery "may be appropriate" so long as dispositive motions are not referred); *cf. California v. Texas*, 459 U.S. 963, 103 S.Ct. 288, 74 L.Ed.2d 274 (1982) (ordering appointment of special master to supervise pleadings and subsequent proceedings to issue subpoenas, and to "take such evidence as may be introduced and such as he may deem necessary to call for").

authority "to preside at trial on the merits of the case"); *Jack Walters & Sons Corp. v. Morton Building, Inc.,* 737 F.2d 698, 711–13 (7th Cir.1984) (criticizing in dicta reference to master of power to make recommendations on motion for summary judgment where "the opinion [the master] wrote was indistinguishable in form from a judicial opinion; and the district judge approved that opinion rather than write his own"); *Bennerson v. Joseph,* 583 F.2d 633, 642 (3d Cir.1978) (district judge violated *La Buy* principle in referring to master entire case on validity of land conveyances).

This case involves no such untoward or irretrievable delegation of judicial authority to decide the merits. *See Will,* 389 U.S. at 104 n. 14, 105, 88 S.Ct. at 278 n. 14, 279 (noting that the *La Buy* decision "specifically relied upon evidence in the record which showed a pattern of improper reference of cases to special masters by the district judge," and thus *La Buy* 's approval of the revocation of a master "is simply inapposite where there is no showing of a persistent disregard of the federal rules"); *see also Vickers Motors, Inc. v. Wellford,* 502 F.2d 967, 968 (6th Cir.1974) (mandamus should not issue unless order of reference has "deprive[d] 'the parties of a trial before the court on the basic issues involved in the litigation' ") (citations omitted). Indeed, Judge Oberdorfer specifically promised the parties that they would have the opportunity to challenge before him the conclusions reached in the master's report. *See* Transcript of December 21, 1987 Hearing at 12 (reprinted as Attachment C to Petition for a Writ of Mandamus).

Despite the weight of this precedent and the rather unremarkable nature of the master's duties in this case, DOD makes two arguments why we should grant its petition for mandamus relief. First, DOD contends, the district judge's decision to appoint a master was grounded on his faulty legal premise that "the integrity of sam-

pling by the government has been authoritatively questioned." DOD observes that several decisions of this circuit have specifically approved of random sampling by the government. *See* Petition for a Writ of Mandamus at 12–13 (hereinafter "DOD Petition") (citing, *inter alia, Meeropol v. Meese,* 790 F.2d 942, 958 (D.C.1986); *Weisberg v. United States Department of Justice,* 745 F.2d 1476, 1490 (D.C.Cir.1984); and *Ash Grove Cement Co. v. Federal Trade Commission,* 511 F.2d 815, 817 (D.C.Cir.1975)). With the district court's erroneous premise exposed, DOD argues, no "exceptional condition" remains to support the master's appointment.

We cannot agree. The cases offered by DOD approving of government sampling all involved the technique of *random* sampling. Yet in the notice to counsel in which he announced his plans to appoint a master, Judge Oberdorfer specifically said that he did not consider random sampling appropriate in this case, deciding instead that the alternative technique of *representative* sampling was required. *See supra.* The former method involves a mechanical selection process designed simply to present a decisionmaker (here, the district judge) with a sample of more manageable size.[6] In the latter method, however, the authority charged with preparing the sample scrutinizes an entire document pool, and includes in the sample items which in its judgment are typical of broader classes of documents within the pool. The sifting process of representative sampling, when properly executed, has the advantage of assuring that the documents in the sample do indeed typify the broader pool. By contrast, random sampling, like the 1% sampling strategy used in *Weisberg,* although appropriate in many cases, may overlook distinctive documents or accidentally shield patently unexceptional documents from FOIA release.[7] A trial judge familiar with

---

**6.** DOD, for example, enumerates as potential random sampling techniques ordering the production "of every fiftieth or one hundredth page." It also offers the alternative of ordering production of sample *documents* based on the court's review of the DOD-prepared document

index. *See* Petition for a Writ of Mandamus at 14 n. 10.

**7.** *See* W. CURTIS, STATISTICAL CONCEPTS FOR ATTORNEYS 91, 91–96 (1983) (unlike conclusions drawn from "[o]bserving an entire population," those

the case clearly has discretion to choose which method is best.

Representative sampling does, however, inevitably involve the exercise of considerable discretion on the part of the party charged with preparing the representative sample. Thus, if representative sampling is deemed necessary as it was here, there is judicial authority for the judge's additional authority to select a nonparty to conduct the sampling. For example, in *Lame v. United States Department of Justice,* 654 F.2d 917 (3d Cir.1981), the Third Circuit described as an "obvious danger" that "the government may choose to submit information on 'representative' documents for which its claims of exemption fare the most persuasive." *Id.* at 928 n. 11.[8] In no case of which we are aware has this or any other court suggested that the trial judge lacks discretion to require a neutral selection of representative documents. We cannot agree therefore with DOD's argument that the reference to a master in this case rested upon a faulty legal foundation. In so ruling we in no way mean to accuse the government of "skullduggery," as Judge Starr suggests in arguing that we should grant this extraordinary writ, *see* Diss. op. at 242, but merely to reaffirm the broad discretion over trial-management tactics with which a district judge is vested.

DOD finally argues that the fact that highly sensitive classified materials claimed under FOIA's national security exemption are involved here counsels against appointment of a master. We disagree. Judge Oberdorfer's decision to appoint a master "who holds, or has recently held, sufficient clearance to have access to the documents," shows commendable sensitivity to the importance of confining the number of persons privy to the documents in question. The alternatives would have been charging the district judge's law clerks with reviewing the documents (thereby expanding the pool of persons with access to the documents, and potentially delaying this litiga-

tion by months while the clerks obtained the requisite clearance), using random sampling (a sorting procedure which is not necessarily appropriate in all cases), and relying on DOD to carry out its own representative screening (a strategy which has obvious drawbacks). *See Ray v. Turner,* 587 F.2d 1187, 1194 (D.C.Cir.1978) ("[w]hether and how to conduct an *in camera* examination of the documents rests in the sound discretion of the court, in national security cases as in all other cases") (footnote omitted).

Judge Starr, however, would grant DOD's petition for mandamus and thereby revoke Judge Oberdorfer's appointment of a master. Yet granting mandamus here would expand considerably this extraordinary writ, using it to second-guess trial judges in situations where they have not exceeded their "prescribed jurisdiction" or failed to exercise their required authority. *See Will, supra.* Moreover, Judge Starr's argument that the trial judge was compelled to consider alternatives to the appointment of a master overlooks the fact that Judge Oberdorfer *did* consider, but ultimately ruled out as inefficacious or otherwise problematic, a number of alternatives, including those we enumerate in the preceding paragraph. Having found serious flaws in these alternatives, he was well within his discretion to conclude that Rule 53 *required* recourse to a master. In urging deployment of a mandamus writ against Judge Oberdorfer, Judge Starr would have us conclude that the trial judge —after four years' experience on this case, and armed with instructive experience on other FOIA litigation to which he alluded in recounting his decision to appoint the master—abused his discretion in adjudging this trial-management technique more effective than others. Nothing in Rule 53, or in the daunting standards governing mandamus, supports such manifest appellate court in-

---

"inferences based upon sample data will always include some error").

**8.** *Lame,* it should be noted, was a representative sampling case, as is the one here. We believe,

however, that it was an overstatement for Judge Oberdorfer to characterize our citation in *Weisberg* of *Lame* as one "with approval." *See* 654 F.2d at 928 n. 11.

terference with Judge Oberdorfer's trial management.[9]

CONCLUSION

█ We conclude finally that although the facts of this case make it *sui generis,* our decision to deny the requested mandamus writ is embraced by a clear limiting principle similar to that at work in those cases upholding appointment of masters to conduct unusual pretrial discovery. *See* note 5, *supra.* That principle as applied to this case is as follows: where a massive number of classified documents exists such that the judge and his law clerk simply cannot examine them all, and where the judge has reasonably concluded that alternative methods of document review are infected with serious problems, appointment of a master to structure the judge's review of these documents is appropriate so long as the judge retains decisional authority over the issue in question. In this particular FOIA case, Judge Oberdorfer had no access to impartial expert evidence or even the benefit of the traditional adversary process to illuminate the nature of the documents in question. He therefore determined, based upon years of experience on this case, that perusal of a random sample of the documents would not provide a sufficient basis upon which to make his decision. He was then faced with the choice of reading all 14,000 pages of classified documents himself, or waiting for his law clerks to be security-cleared for access to them. Instead, he chose a security-cleared expert in the field as a master to make the initial selection of the representative documents for his examination. In our view, this combination of factors clearly met the requirements of Rule 53. We therefore deny DOD's petition for a writ of mandamus.

*It is so ordered.*

STARR, Circuit Judge, dissenting:

This is an unusual case, bringing with it a request for an extraordinary remedy. It is common ground that mandamus is not lightly to be granted, even if the appellate tribunal were of a different mind than the trial court on the issue at hand. *See, e.g., Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (per curiam) ("[M]andamus is a drastic [remedy], to be invoked only in extraordinary situations."). But I would presume that, in the interest of the care and assiduity with which our District Court customarily conducts its business, the distinguished trial judge would reconsider embarking upon the proposed course of action at this particular juncture. In short, for reasons I shall now briefly set forth, appointment of a master seems to me quite premature. Less intrusive avenues, more keenly sensitive to the understandable concerns over national security information, are readily at hand. Their employment may well obviate the need for resort to a non-governmental actor to serve as a special master, thus rendering inapplicable at this time the extraordinary mechanism authorized by the terms of Rule 53.

I

It is important to recall at the outset the very limited nature of our enterprise today, inasmuch as we have been favored, by virtue of the procedural posture of the matter, only with application and opposition papers which went before the Motions Division of this court and which that Division determined were sufficiently problematic to warrant sending to a regular panel. The highly unusual nature of what has been wrought below is thus highlighted by this court's unusual treatment of the matter, including setting the application down for oral argument on an expedited basis. I would assume that if the issue had not involved access to national security information, and highly sensitive information at that, either mandamus would not have been sought in the first instance or the Motions Division would have treated this in the ordinary course of practice, rather than fashioning the special treatment that the application has been afforded. Indeed, the

---

**9.** The record in this case lends no support to Judge Starr's assertion that the *Vaughn* index prepared by DOD "languishes unread." Diss. op. at 240.

fact that substantial appellate resources have now been devoted to this question, including review at this early stage by no less than five members of the court, suggests the need for grave circumspection in the arena of national security information. For reasons now to be set forth, I believe greater care is called for before proceeding farther on the unusual course which has now arrested the attention of almost half of this court's active judges.

## II

Over the years, this court has sounded different themes with respect to the appointment of masters in FOIA cases. Here, in brief, is the state of the law as I read the cases: first, it is clear that special masters can indeed be appointed in FOIA cases. *Vaughn v. Rosen* and *Meeropol v. Meese* say as much. Second, their use is to be carefully limited, consistent with the points articulated in *Meeropol.* We should not overlook *Meeropol*'s language, which surely calls for care and prudence on the part of the district courts in venturing into the domain of Rule 53:

> Indeed, in litigation of this size, the appointment of a special master will often present more problems than it will solve. If the master makes significant decisions without careful review by the trial judge, judicial authority is effectively delegated to an official who has not been appointed pursuant to article III of the Constitution; if the trial judge carefully reviews each decision made by the master, it is doubtful that judicial time or resources

will have been conserved to any significant degree.

*Meeropol v. Meese,* 790 F.2d 942, 961 (D.C. Cir.1986). This cautionary language comports with the unequivocal language in the Rule itself. Appointments of masters, the Rule instructs, "shall be the exception and not the rule." Fed.R.Civ.P. 53(b).

It is, in all candor, difficult for me to see how an appointment, however distinguished the proposed master may be, is "required" when other "non-master" routes are so readily available. It is undisputed that the judicially approved method of random sampling is available and as yet unemployed. Likewise available is an *in camera Vaughn* index and affidavit, presumably crafted with at least a modicum of care, that languishes unread.[1] Under these circumstances, it would seem almost by definition that an appointment cannot be "required" if other vehicles or avenues are at hand. To so hold has the obvious and untoward effect of draining Rule 53's language of its natural meaning. That language, lest there be any mistake, sounds not in broad, sweeping terms of judicial discretion. Rather, Rule 53 commands a *showing* that some *exceptional condition requires* the appointment.

Here, it is by no means evident that a master's appointment is "required" by an "exceptional condition" within the meaning of Rule 53, nor are any reasons evident in the record that would warrant such an appointment. The "exceptional conditions" referred to by the trial court include the

---

1. My colleagues, however, find no support in the record for my observation that the trial court has yet to avail itself of the affidavit. Maj. op. at 239 n. 9. I read this to mean that if indeed the District Judge has not examined the affidavit for reasons nowhere stated in the record, then we would have quite a different case. At this stage, only the trial court and (presumably) the Government know the answer to this for sure. If the District Court has not in fact taken this step, then surely my colleagues' remonstrating with me on the point argues in favor of the trial court's examination of the affidavit. Indeed, it is hard to imagine the justification for refusing to examine the affidavit before resort to a master. It would be passing strange for the District Court deliberately to bypass a readily available source of information

and yet for an appellate court to suggest that the "extraordinary condition" and "requirement" language of Rule 53 has been satisfied. And, in that respect, the language of the Rule itself stands as a rebuke to the remarkable proposition seemingly embraced by my colleagues that less intrusive remedies, which are consistent with the concerns informing Congress' crafting of the First Exemption to FOIA, may be dismissed by the trial court without an explanation of why they are inappropriate or inefficacious. Notwithstanding the majority's assertions, it simply does not constitute "manifest appellate court interference" in trial court affairs when appellate courts point to judicially approved procedures that have yet to be employed, without *specific* explanation, by the District Court.

burden presented by the necessity of *in camera* review of voluminous, highly sensitive documents, particularly in light of the difficulty of obtaining security clearances for judicial clerks and staff. But these factors cannot constitute "exceptional conditions" *requiring* the appointment of a special master unless the court can point to some reason why other, judicially-sanctioned methods of dealing with these common FOIA problems will not suffice. This the District Court, with all respect, has failed to do.

The District Court's rejection of government-conducted sampling, on the ground that "the integrity of sampling by the government has been authoritatively questioned," is predicated on an unfortunate misunderstanding of this circuit's law. This court has never purported to adopt the Third Circuit's provocative observation, and in a modest footnote at that, that a representative sample compiled by the government may not in fact be truly representative. *See Lame v. United States Dep't of Justice*, 654 F.2d 917, 928 n. 11 (3d Cir. 1981); *cf.* Mikva, *Goodbye to Footnotes*, 56 U.Colo.L.Rev. 647 (1985). The trial court's rejection of random sampling as not "particularly appropriate for the circumstances here" tells us nothing about what it is about these circumstances that renders it inappropriate. Without more, this can only be characterized as *ipse dixit*. Similarly vague is the statement that the decision to appoint a master was informed by the District Court's recent experience in another, less technical FOIA case. Although I am genuinely in sympathy with our trial judges seeking conscientiously to cope with the demands of these difficult cases, for aught that appears these "reasons" would justify the appointment of a master in *all* cases of this genre, in contravention of the express terms of Rule 53. If that is so, then we would appear to be left with a violation of the plain language of the Federal Rules. *Cf. In re Wolf & Shenk*, 842 F.2d 464, 466 (D.C.Cir.1988) (per curiam) (mandamus appropriate when district court order directly conflicts with Fed.R.Civ.P. 41(a)(1)).

Underlying the majority's ready approval of and the trial court's desire for a special master here is the notion that, in contrast to the difficulties presented by these other avenues, a special master can promptly and securely process the voluminous documents and neatly summarize the arguments the parties made (and could have made), thereby greatly facilitating resolution of the case. A special master, in short, will make life easier. Although this may well be true, it is beside the point. The vehicles bypassed by the District Court, which have enjoyed unquestioned appellate approbation, were developed and approved with the specific purpose of facilitating review of difficult FOIA cases *by Article III judges*, who are charged with resolving FOIA disputes. Although it is not for us to direct in minute detail how the trial court should perform what is indisputably its task, we should not be quick to sanction an extraordinary remedy when the District Court has yet to explain why other avenues, which have in the past enabled it adequately to fulfill its task, are unavailing. Surely convenience alone does not suffice as an explanation, for if it did masters would be the rule in all FOIA cases of any size.

The use in Rule 53 of the word "require," we can safely assume, was no accident. To hold that trial judges have no obligation to explain why other courses of action, short of appointing a master, will not suffice thus empties the Rule of any content. At the very least, the trial judge must explain why a master is "required," *i.e.*, necessary or essential. *See* Webster's Third New International Dictionary 1929 (1981). If Rule 53 really means "desire" rather than "require," then today's result follows. But as a matter of logic (and if the Rule means what it says), before a master is *required*, other ordinary courses must *necessarily* be inefficacious. In this case, there were at least two judicially approved alternative courses to follow short of appointing a special master. In my view, the District Judge is obliged to explain *the reasons why* those previously approved methods would not work *under the particular circumstances of this case.* Only then could we truly say that an excep-

tional condition had *required* the District Judge to appoint a special master.

## III

The stark language of Rule 53 means that reliance on judicial "discretion," like reliance on agency expertise, cannot bridge the large gulf between "desire" and "require." At other pivotal points in our law, the familiar and salutary principle of discretion has not been deemed adequate to insulate trial court conduct. *See, e.g., Shea v. Donohoe Constr. Co.,* 795 F.2d 1071, 1072 (D.C.Cir.1986) (failure by district court to explore less drastic sanctions than dismissal constituted abuse of discretion); *Northrop Corp. v. McDonnell Douglas Corp.,* 751 F.2d 395, 399, 403 (D.C.Cir.1984) (district court abused discretion when it quashed subpoena without first exploring whether available alternatives might accommodate the parties' interests). That being so, the proper question before us is this: what, on this record, *requires* the appointment of a master? In answering this question, it seems manifest that, say, Option 1 is not "required" if Options 2 and 3 are available (and efficacious). So to satisfy Rule 53, it seems incumbent upon us (or at least upon the trial court, whose action *at this stage of the litigation* is more shielded by the daunting standards governing the extraordinary writ of mandamus) to determine that "less intrusive" options are unavailing.

It is here that I am obliged to part company with my colleagues. They appear (albeit in the expedited, less reflective posture of this proceeding) readily to embrace an approach that has not heretofore even been considered, much less passed upon, in this circuit.[2] In brief, it would appear that *representative samples* (selected by a "neutral" party) are viewed by my colleagues as being just as appropriate as the already-judicially approved random samples, along with a *Vaughn* index, without any showing as to why the characteristic of "representativeness" must be satisfied. *See* Maj. op. at 236, 237–38. This, as I read the cases, breaks new ground.[3]

## IV

So why, *in this case,* will the less intrusive, judicially efficient mechanism of random sampling not work? To cut through the fog, Mr. Armstrong's counsel at oral argument made the heretofore unspoken point rather clearly. It was, in essence, that the District Judge, based upon his "feel" for the case, did not trust the government to produce a random sample. If that is what is going on here, then a most serious charge indeed has been laid at the government's feet. To state the obvious, it flies in the face of presumptions of regularity which guide us day in and day out, presumptions which grow out of a proper respect for the coordinate branches of our government. If there is a suspicion (or determination) of skullduggery or lack of candor in the Executive Branch, then let us satisfy the fundamental obligation of candor in the Judicial Branch and put the point on the table. Is it that the government, *in this case,* is not to be trusted? Has the government so conducted itself *in*

---

**2.** Moreover, the majority's opinion goes beyond what is necessary to decide this case. The sole question is whether mandamus should lie to forestall the appointment. We therefore take this case as it comes to us procedurally, as a request for an extraordinary writ. There is no contention here, at least as the papers before us stand, that the trial court's action constitutes a collateral order under the *Cohen* doctrine, so as to bring the question up for "true" appellate resolution. *Cf. Hinton v. United States Dep't of Justice,* 844 F.2d 126 (3d Cir.1988).

**3.** Having seemingly sanctioned representative sampling as a matter of course, the majority asserts that "there is judicial authority for the judge's additional authority to select a nonparty

to conduct the sampling," Maj. op. at 238, pointing to the Third Circuit's opinion in *Lame* for support. *Lame* is deliciously styled; it provides the most slender reed upon which to rely. *See supra* p. 241. Indeed, *Lame,* did not even involve the attempted appointment of a special master, and thus there was no occasion (as here) to consider the appointment of nonparties to assist the district court. Although I do not quarrel with the unexceptionable assertion that the District Court enjoys authority to appoint a nonparty, this authority stems solely from Rule 53. And Rule 53, to repeat once again, requires a showing that an exceptional condition requires the appointment.

*this case* that the trial court has determined that the litigation requires going outside customary FOIA procedures and the invocation of extraordinary ones? What is it *about this case* that is different than any other multi-document, national-security case? What principle limits the appointment of a master to the "exceptional" conditions here but would be unavailing in other situations? *See also supra* 240–41.

These are the questions that cry out to be answered. But the questions go unanswered. My colleagues' opinion, for all its words, is completely silent. And, after reviewing the record, I am satisfied that the District Court has remained silent as well. *I frankly have not a clue as to why a master is needed here but not in every other voluminous-record, national security case.* In consequence, the District Court should be instructed to reconsider its action and, if the trial judge chooses to stay his present course, to provide a *specific* justification for the proposed appointment consonant with the demands of Rule 53.

\* \* \* \* \* \*

Today's result can, at bottom, best be explained by the deference which appellate courts frequently, albeit not invariably, accord our colleagues on the trial bench. But in view of the extraordinary procedural posture of mandamus, it would surely be wrong to take our labors today as setting the course for the future interplay between Rule 53 and the understandable desire to deal effectively and fairly with sensitive FOIA litigation. The yellow light is flashing.