**Yvonne G. TROUT, et al., Plaintiffs,**

v.

**William L. BALL, III, et al., Defendants.**

**Civ. A. No. 73–0055 (HHG).**

United States District Court, District of Columbia.

Feb. 13, 1989.

Bradley G. McDonald, John E. Karl, Jr., McDonald & Karl, Washington, D.C., for plaintiffs.

Wilma A. Lewis, Asst. U.S. Atty., Washington, D.C., for defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

This case, in which discrimination against a class of women working for the Navy was established many years ago, is a textbook example of how litigation tactics are sometimes employed by the government to

delay the grant of relief to aggrieved citizens for a truly scandalous period of time.

# I

## Background

The case was filed in 1973, sixteen years ago. As such, it is by far the oldest case on this Court's calendar. Most of the delay between then and now has been due to the government's determination not to permit any decision or order, no matter how clear or obviously appropriate, to go unchallenged.[1]

The first relief order, following a decision establishing the entitlement of between 60 and 70 female employees of the Navy potentially involved to compensation for the sex discrimination against them, was issued on October 20, 1981. Over seven years have elapsed since that waystation on the litigation path, and defendants have successfully managed to avoid paying one dime to the successful class members during that period. While appeals to the Court of Appeals and the Supreme Court are certainly legitimate endeavors, the government has gone well beyond the normal appellate procedures and has frustrated even those courts with its dilatory tactics. *See* note 1, *supra.* The government has similarly frustrated the consummation of ancillary proceedings.[2]

The consequence of these governmental actions has been that a substantial number of female employees of the Navy, who notwithstanding the government's determined resistance, have again and again been found to have been seriously discriminated against on account of their gender, have been afforded no relief. At a time when even the most backward private employers have accepted the principle that discrimination against women is both legally invalid and morally reprehensible, the Departments of Justice and of the Navy keep engaging in the most transparent dilatory maneuvers to avoid or postpone rectifying what has been done to this class of women. In this Opinion, the Court considers the latest means devised by these defendants for frustrating a final resolution of this lawsuit.

On October 12 and November 28, 1988, the Court issued two Orders referring individual claims with respect to backpay arising out of the judgment in favor of the class to a special master. Defendants have now filed a motion for reconsideration. They challenge the Orders on three grounds: (1) reference to a special master was inappropriate and the case should have been referred instead to a U.S. Magistrate; (2) the Navy cannot be held responsible for the special master's fees under principles

---

1. *See, e.g., Trout v. Lehman,* 702 F.2d 1094, 1106 (D.C.Cir.1983), where the Court of Appeals, even then criticizing the government's efforts to reopen settled issues, said:

   At some point litigation must come to an end, even though it is always possible to offer more evidence ... We find it extremely troublesome—in light of the long and complex history of this litigation and in light of Judge Greene's patient and thoughtful treatment of the case—that the appellants would even propose that the trial court reopen and retry the matter. In the context of this case setting, such an adversarial tactic is irresponsible ... and wasteful of precious resources of litigants and the judiciary.

   That opinion was issued in this case six years ago.

   Likewise, Justice Stevens, dissenting from the Supreme Court's remand of this case, said the following regarding the government's tactics in this case as long as five years ago: "The Court's action today encourages the kind of litigation strategy that gives the party with the greater resources a significant advantage unrelated to

the merits of the case," and he further commented that the government's conduct of this litigation "has hardly been a model for future cases. The most persuasive evidence on which petitioners relied in their argument before this Court was not adduced until they filed a motion for reconsideration well after the District Court had decided the case...." *Lehman v. Trout,* 465 U.S. 1056, 1061 and n. 8, 104 S.Ct. 1404, 1407–08, and n. 8, 79 L.Ed.2d 732 (1984).

2. For example, when the Court ordered that counsel for the plaintiffs be paid at least those amounts in counsel fees that were undisputed, the government promptly took an appeal, which is still pending. Since counsel, who is not a member of a large firm, has conducted the litigation on behalf of the class of women without having so far received any compensation, the government's refusal to agree to the payment even of undisputed amounts can only have the effect, if not the purpose, of making it increasingly difficult for the class members to continue to enjoy effective representation.

of sovereign immunity; and (3) the $200 hourly rate for the special master's services set by the Court in its November 28 Order is too high. Because all these arguments are without merit, the motion will be denied.

## II

### Reference To Special Master

■ The Court is of course aware of the provision in Rule 53(b) that reference to a special master should be the exception and not the rule. However, the current proceedings in this case is plainly of the kind that require a reference to a special master.

As an initial matter, the case requires a difficult computation of damages, which is one instance in which Rule 53 specifically recognizes the possible need for special masters. *See* Rule 53(b). In addition, the comments to Rule 53 note that "masters may prove useful when some special expertise is desired...."

The first task of the special master in this case is to determine which statistical methodology is most appropriate for determining the backpay of the individual members of the class. Computation of backpay with an adjustment for lost promotions under either of the possibly applicable methodologies is a difficult and time-consuming process. To ensure that the best methodology is chosen and is properly applied, the Court appointed a special master with extensive experience in the area of civil rights and employment discrimination litigation.[3]

Strong support for the reference to a special master is also provided by the fact that numerous claims are involved in this case. *Brock v. Ing*, 827 F.2d 1426 (10th Cir.1987). The dockets of the U.S. Magistrates in this Courthouse are already seriously overcrowded. A reference of this case to a Magistrate would mean delaying action on the individual relief portion of this case, once again, for months or even years.[4] It was the Court's concern that the "claims of the class members be adjudicated in an expeditious manner"[5] that prompted in part its decision to refer the case to a special master who is able to devote substantial amounts of time to hearing and disposing of the many individual claims.

In short, because of the complicated decisions as to which statistical methodology to apply and how to apply it, the number of claims involved, and the excessive delays which have already occurred in adjudicating individual claims for relief, reference to a special master is manifestly appropriate in this case and well within the Court's discretion. *See In Re U.S. Department of Defense*, 848 F.2d 232, 236 (D.C.Cir.1988). That reference will stand.

## III

### Sovereign Immunity

■ Although the defendants agree that the fees of a special master are "costs," they maintain that the fees are not costs as to which the government has waived its sovereign immunity, and that it therefore cannot be liable for those fees.

28 U.S.C. § 2412 provides for a waiver of sovereign immunity for costs as enumerated in 28 U.S.C. § 1920. The defendants claim that, since section 1920 does not specifically list costs of a special master as costs that will be paid, they are not liable for those costs. This argument was rejected by the Court of Appeals for the Ninth Circuit in *NORML v. Mullen*, 828 F.2d 536,

---

**3.** Lawrence Speiser, Esq., the special master appointed in this case, has been involved in civil rights litigation for over 35 years. He was a staff council for the American Civil Liberties Union from 1952–57, and he served as the Director of the ACLU's Washington Office from 1959–70. Since 1971 he has devoted a large amount of his time to representing government employees, often in employment discrimination cases. He has served as an arbitrator for the D.C. Superior Court, and he was appointed by another judge of this Court to serve as an arbitrator in a dispute between two nationwide labor unions.

**4.** This is of course particularly true since defendants have demonstrated an unflappable willingness to litigate and relitigate every detail of this case, and more particularly its relief phase.

**5.** Order, October 12, 1988.

545–46 (9th Cir.1987), as well as by a number of other courts. *See National Assoc. of Radiation Survivors v. Turnage,* 115 F.R.D. 543, 561–64 (N.D.Cal.1987); *Young v. Pierce,* 640 F.Supp. 1476, 1491 (E.D.Tex. 1986), *vacated on other grounds,* 822 F.2d 1368 (5th Cir.1987). The *NORML* court held that the language of section 2412 is not explicitly exclusive, and, more importantly, that the legislative history underlying this provision indicates that it was the purpose of the section to waive sovereign immunity for such costs as could be taxed to an ordinary citizen.[6]

This Court shares the view of the Ninth Circuit and of the several other courts that have passed on the issue that costs of special masters may properly be charged to the government. In fact, this has also been the implicit rule in this Circuit for a long time. District Judges in this Circuit have often required the government to pay for the costs of special masters. *See In Re U.S. Department of Defense,* 848 F.2d 232, 234 n. 3 (D.C.Cir.1988); *Ayuda v. Meese,* 700 F.Supp. 49 (D.D.C.1988) (stay of Order XI vacated by Court of Appeals in *In Re Thornburgh,* No. 88–5360, Order dated February 1, 1989, allowing special master process to proceed); *United States v. AT & T,* 461 F.Supp. 1314, 1348 n. 112 (D.D.C. 1978).[7] Significantly, the identical sovereign immunity argument that is made here was advanced by government counsel before the District Court in *Washington Post v. U.S. Department of Defense,* C.A. No. 84–0300,[8] but was apparently abandoned

before the Court of Appeals in the government's petition for a writ of mandamus, *In Re U.S. Department of Defense.* And in considering the petition, the Court of Appeals expressed no concern over the fee structure of the District Court's special master process. 848 F.2d at 234 n. 3.

In this case as well the Court finds that the costs of the special master should be borne by the Department of the Navy whose actions created the need for the special master process.

## IV

### Special Master's Fees

■ Finally, defendants challenge the $200 hourly fee to be paid to the special master as too high. In determining the fees to be paid to a court-appointed special master, the analysis to be conducted is similar to that used in computing court-awarded attorneys' fees. The rule in this Circuit is that fees are to be determined based upon the prevailing market rate for similar work. *Save Our Cumberland Mountains, Inc. v. Hodel,* 857 F.2d 1516 (D.C.Cir.1988) (en banc).

Prior to determining the fees to be paid to the special master in this case, the Court investigated the prevailing market rate for similar work. As it stated in its Order dated November 28, 1988, it found that $200 is the average prevailing hourly rate for special masters conducting similar adjudicative proceedings.[9]

---

**6.** According to the Senate Report regarding the relevant language in 28 U.S.C. § 2412:

> The present law permits a disparity of treatment between private litigants and the United States concerning the allowance of court costs. This bill will correct this disparity by putting the private litigant and the United States on an equal footing as regards the award of costs to the prevailing party in litigation involving the government.

S.Rep. No. 1329, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin.News 2527, 2528.

**7.** In the *AT & T* case, where the special masters were appointed pretrial, before any determination of liability, the special master costs were shared by the government and the defendant.

**8.** Defendant's Motion to Stay the Appointment of a Special Master Pending the Filing of Petition for a Writ of Mandamus (Jan. 11, 1988).

**9.** Among the orders and letters considered by the Court were a letter from Dean Howard Glickstein of Touro Law School stating that he is currently being paid $200 per hour to serve as a special master in at Title VII case in New York; a seven-year old order by Judge Daly appointing Dean Glickstein as a special master in an age discrimination case in Connecticut and providing for fees of $100 per hour and compensation for costs which included a research assistant; a report of David Schwartz, special master in *Hybritech v. Abbott Laboratories,* charging fees of $250 per hour; an order by Judge Oberdorfer appointing special master

The Court notes that defendants have not produced any evidence to dispute the Court's conclusion as to the hourly rate for special masters. Their sole argument appears to be that special masters should not be paid the highest range of fees paid in private litigation. *See Reed v. Cleveland Board of Education,* 607 F.2d 737, 745 (6th Cir.1979). As stated above, the Court did not base its determination upon the fees paid to attorneys in private litigation, but upon the fees paid to special masters for this kind of work. In addition, however, the $200 hourly rate is well below the fees that would be paid to a lawyer with Mr. Speiser's experience.[10] Thus, even on this basis the fees paid to Mr. Speiser are reasonable.

In its order setting forth the fees to be paid, the Court also provided that the special master should be paid monthly. The task of a special master need not be completed before his compensation may be exacted from a losing party. *Gary W. v. State of Louisiana,* 601 F.2d 240 (5th Cir. 1979). The special master process in this case will be a lengthy one and is likely to occupy much of the master's time. To enable him to undertake this task, it is necessary that he be paid as the process is being completed. Therefore the Court's order that defendants pay the special master monthly remains in effect. Payment of interim fees to a special master has been provided for by courts in this District in other cases in which the government is required to pay. *See, e.g., Ayuda v. Meese,* 700 F.Supp. 49 (D.D.C.1988).

There are now two outstanding orders directing defendants to pay the special master's fees. In light of the denial of the motion for reconsideration, there is no longer any reason for further delay, and the Court is ordering that the fees be paid now.

## V

### *Stay*

Within the last few days, the defendants have moved for a stay of the special master process for sixty days beyond the date of issuance of this Memorandum, presumably to give them time to consider how to proceed with respect to the Court's decisions. In support of their position, they rely on 31 U.S.C. § 1304 and 28 U.S.C. § 2414, arguing that funds of the United States may not be used to pay anything short of a final judgment, and that a judgment is only final when the Attorney General certifies that "no appeal shall be taken from a judgment or that no further review will be sought from a decision affirming the same." 28 U.S.C. § 2414.

There is in this case a final judgment as to liability. It has been final for almost eight years. It was reviewed by the Court of Appeals for this Circuit and by the United States Supreme Court, and it was reaffirmed, following appellate review, by this Court. The costs of the special master process arise out of that judgment, and they must under the law therefore be paid as ordered.

Moreover, as the Court noted previously, failure to pay the special master on an interim basis will achieve defendants' desired result through the backdoor, as it will mean that no one will be able, as a practical matter, to undertake the job of the special master in this case. The inevitable effect will be further to postpone relief to the women against whom the Navy has discriminated until the government has filed and exhausted every conceivable appeal that its lawyers can conjure up—a process

Kenneth C. Bass and letter from the special master stating that his fees ranged from $160 to $190 two years ago, in 1987.

**10.** The attorney fee matrix approved in *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354, 371 (D.D.C.1983), was embraced by the Court of Appeals for this Circuit in *Save Our Cumberland Mountains v. Hodel,* 857 F.2d 1516 (D.C.Cir. 1988) (en banc), and updated in connection with that case. Although the updated matrix was never expressly approved by the court because the parties settled the issue of fees, it does provide an accurate and updated schedule of attorney fees in this District. It reveals that the hourly rate for a litigator with Mr. Speiser's experience averages $265. *See* Declaration of Joseph A. Yablonski, principal counsel in *Save Our Cumberland Mountains,* attached to Speiser affidavit.

**710**

that, based on past experience in this case, can once again take many years. The motion for a stay will be denied.

## VI

### Conclusion

The appointment of a special master with experience in the area of employment discrimination to determine the amounts due the individual members of the class is crucial to the final, fair, and expeditious resolution of this case. The Court and the parties are fortunate that Mr. Speiser has agreed to oversee that process. After sixteen years, it is high time for the process to begin.

### ORDER

Upon consideration of defendant's motion for reconsideration and relief from orders of reference to special master, the opposition thereto, and the entire record herein; in accordance with the Memorandum being issued contemporaneously herewith, it is this 13th day of February, 1989

ORDERED that defendant's motion for reconsideration and relief from orders of reference to special master be and it is hereby denied; and it is further

ORDERED that defendants' motion for a stay be and it is hereby denied; and it is further

ORDERED that defendants shall pay the outstanding fees totalling $6,019.90 owed to the special master within twenty days of the issuance of this Order; and it is further

ORDERED that defendants shall pay the special master an additional $4,007.72 in fees, pursuant to the Third Report of the Special Master, within twenty days of the issuance of this Order.