The **WASHINGTON POST**, Plaintiff,

v.

**UNITED STATES DEPARTMENT OF DEFENSE**, Defendant.

Civ. A. No. 84–3400–LFO.

United States District Court, District of Columbia.

April 14, 1992.

Sheryl L. Walter, Nat. Sec. Archive, Nancy L. Perkins, Arnold & Porter, Washington, D.C., for plaintiff-intervenor.

Raphael O. Gomez, Federal Programs Branch, Civil Div., Dept. of Justice, Washington, D.C., for defendant.

Kenneth C. Bass, III, Venable, Baetjer, Howard & Civiletti, Washington, D.C., special master.

## MEMORANDUM

OBERDORFER, District Judge.

This matter is before the Court on the defendant's objections to the fee application filed by the "security cleared expert" Special Master[1] and the reply of the plaintiff-intervenor[2] to those objections. The original appointment was the subject of an unsuccessful Government petition to the Court of Appeals for a writ of mandamus (or more accurately prohibition) of the appointment. *In re United States Department of Defense*, 848 F.2d 232 (D.C.Cir. 1988). The Special Master has now completed his task. The Government has produced some of the previously withheld documents which the Special Master selected as a representative sample and has undertaken a re-examination of the 2,000 documents still withheld as a result, in part, of insights afforded to the Government from the document samples selected by the Special Master for court review, and the urging of the Court in *in camera* and open court proceedings.

■ The Government argues, at the threshold, that sovereign immunity precludes its sharing the cost of the Special Master's services. The plaintiff-intervenor has thoroughly dissected the argument. *See* Plaintiff–Intervenor's Response to Defendant's Opposition to Special Master's Application for Fees, at 2. Suffice it to say here that section 552(a)(4)(E) of the Freedom of Information Act (FOIA) plainly provides that "the court may assess against the United States reasonable attorney fees *and other litigation costs* reasonably in-

curred in any case under this section in which the complainant has substantially prevailed." (Emphasis added). The Government concedes in commendable recognition of a 70 year old Supreme Court precedent, that "[t]he fees and expenses of Special Masters routinely have been regarded as 'costs.' *See Newton v. Consolidated Gas Co.*, 259 U.S. 101, 103 [42 S.Ct. 438, 439, 66 L.Ed. 844] (1922)." Defendant's Opposition to Special Master's Application for Fees, at 12. The Government nowhere explains what a Special Master's fee could be if it were not a cost of litigation. The sovereign immunity argument, although not misleading, is plainly untenable and must be rejected. *Cf. United States v. Williams*, 952 F.2d 418, 421–22 (D.C.Cir.1991).

■ The Government's resistance to the award of interim fees in FOIA cases also lacks merit. Courts in this Circuit repeatedly have awarded interim fees in FOIA litigation before a final adjudication on the merits of an action. *See, e.g., Allen v. FBI*, 716 F.Supp. 667, 671 (D.D.C.1989); *Allen v. Dep't of Defense*, 713 F.Supp. 7, 12–13 (D.D.C.1989); *Wilson v. U.S. Dep't of Justice*, C.A. No. 87–2415, 1989 WL 298673, Memorandum at 2 (D.D.C. Sept 12, 1989). Recognizing that interim fees were available under analogous fee-shifting provisions in other statutes and the absence of any legislative history reflecting a congressional intent to construe FOIA's attorney's fee provisions differently, the Court of Appeals for the Ninth Circuit held:

When citizens must litigate against the government to obtain public information, especially when, as here, release of the withheld records appears to be in the public interest rather than for merely private gain, it is entirely appropriate that interim fee awards be available to enable meritorious litigation to continue.

*States Department of Defense*, 848 F.2d 232, 234, 239 (D.C.Cir.), *cert. denied*, 488 U.S. 820 (1988).

---

1. Special Master Kenneth C. Bass III is a member of the Baltimore and Washington firm of Venable, Baetjer, Howard & Civiletti "who was previously counsel for intelligence policy in the Department of Justice and who in that capacity held top-secret security clearance." *In re United*

2. On April 15, 1986, Mr. R. Scott Armstrong, plaintiff Washington Post staff writer who originally made the FOIA request, was granted leave to intervene.

*Rosenfeld v. U.S.*, 859 F.2d 717, 724–25 (9th Cir.1988). This is all the more true here where the fees are to be paid to a neutral third party, appointed by the Court to facilitate the resolution of the matter.

■ The Government argues that even if an interim fee can be awarded in a FOIA suit, the Court cannot compel it to pay an interim award until the judgment becomes "final" under 28 U.S.C. § 2414. This argument depends on the assumption that the fee in this case is only payable out of the Judgment Fund established by 31 U.S.C. § 1304. It is noteworthy that the Government advances this theory without reference to any authority, and in defiance of legislative history,[3] the considered opinion of a respected judge [4] as well as that of the Court of Appeals for the Ninth Circuit.[5] Addressing this same argument in the context of the comparable fee transferring provision in Title VII, 42 U.S.C. § 2000e–5(k), our Court of Appeals declared "that to acknowledge an interim fee as *awardable* against the government but not *payable* prior to a judgment the government accepts as final 'mak[es] nonsense of the concept of an *interim* award.'" *Trout v. Garrett*, 891 F.2d 332, 334 (D.C.Cir.1989) (emphasis in original) (quoting *Rosenfeld*, 859 F.2d at 727).

■ Nor can the Government sustain its contention that it has no responsibility for the fees on its theory that the plaintiff-intervenor has not "substantially prevailed" within the meaning of Fed.R.Civ.P. 53(a). In order to evaluate plaintiff-intervenor's contentions and to cope with the great volume of sensitive documents in light of the Government's opaque responses, the Court appointed a lawyer specially skilled in the classification of national security documents as a Special Master to select meaningful sample documents from the several thousand at issue. From this sample the Court would establish principles which would govern the classification of similar documents among those withheld. As a result of plaintiff-intervenor's persistence, identification of obvious gaps in the Government's response and the labors of the Special Master, as well as the Government's most recently cooperative stance, the Government has now produced several key documents and has undertaken to re-examine 2,000 more that had been previously withheld. It will conduct this re-examination with the benefit of the perceptions of the Special Master and the Court's *in camera* comments about them. Even if no further relief should be afforded to plaintiff-intervenor and even if defendant prevails on appeal from a final decision here, there is no principled or effective way that the Government can withhold the documents it has now released or terminate the re-examination it has undertaken. From the foregoing it is apparent that the plaintiff-intervenor has substantially prevailed even if no judgment has been entered in its favor. *See Church of Scientology v. Harris*, 653 F.2d 584, 587 (D.C.Cir. 1981) (relevant issue is one of causation: "did the institution and prosecution of the litigation *cause* the agency to release the documents obtained during the pendency of the litigation?"); *see also Fund for Constitutional Gov. v. National Archives*, 656 F.2d 856, 871 (D.C.Cir.1981) ("the mere fact that a FOIA requester might have ultimately received the documents in question in the absence of litigation is not a sufficient basis for a finding that it has not substantially prevailed"); *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1364 (D.C.Cir.1977) (voluntary disclosure of documents prior to judgment does not transform the agency into the prevailing party); *Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509 (2d Cir.1976).

Thus, the plaintiff-intervenor has already prevailed sufficiently to justify the award

---

3. *See* S.Rep. No. 93–854, 93rd Cong., 2d Sess., *reprinted in* Subcomm. on Gov't Information and Individual Rights of the House Comm. on Gov't Op., et al., *Freedom of Information Act and Amendments (P.L. 93–502) Source Book: Legislative History, Texts, and Other Documents* (Joint Comm.Print 1975) at 169.

4. *Allen v. FBI*, 716 F.Supp. 667 (D.D.C.1989) (Green, June, J.).

5. *Rosenfeld v. United States*, 859 F.2d at 726.

of some fees to his counsel. The work of the Special Master, for which he has applied for a fee, is complete.[6] In these circumstances the Special Master is also entitled to a fee, a portion of which should be paid by the United States.

■ Nor can the Government prevail on its challenge to the rate charged by the Special Master for his time or his charges for the services of legal and paralegal assistants in his distinguished law firm. Rule 53 vests considerable discretion in the supervising trial court to fix the Special Master's fee. The Supreme Court recognized long ago that compensation, at a rate commensurate with, if not higher than, a lawyer's normal client rate was

> generally necessary in order to secure ability and experience in an exacting and temporary employment which often seriously interferes with other undertakings.

*Newton*, 259 U.S. at 105, 42 S.Ct. at 439. The Special Master here brought to this demanding task special skills and expertise rare in the private bar. He performed his service ably within the somewhat awkward constraints necessarily imposed to prevent delegation of the judicial function. The employment was indeed temporary and undoubtedly occupied chargeable time which he and his firm could have otherwise devoted to employment by a prompt paying client. Moreover, the Special Master's hourly rate is the rate customarily charged by his law firm for any engagement involving "highly specialized skills or requiring application of particular expertise." Supplemental Report of the Special Master (Jan. 8, 1992). Accordingly, the accompanying Order will allow the fee and reimbursement sought by the Special Master.

■ There remains the question of allocation of responsibility for the fee between defendant and plaintiff-intervenor. Rule 53(a) also gives the supervising trial court considerable discretion to charge the fee "upon such parties ... as the court may direct." The order appointing the Special

Master contemplated that a larger portion of the fee should be paid by the party who does not substantially prevail. *In re United States Department of Defense*, 848 F.2d at 234 n. 3. Here, while as indicated, plaintiff-intervenor has substantially prevailed, the fact remains that the documents here at issue were extremely sensitive. The Court has been very reluctant to second guess, much less disturb, the judgment of the military on the subject. For, as events unfolded in the Middle East, it became dramatically apparent that much of the information in the documents could remain critically sensitive long after the events they evidence passed into history. But there was also a concern pressed by plaintiff-intervenor that those screening the documents may not have focussed carefully enough on relevant distinctions between portions of them that were sensitive and those which would and should have been disclosed under the most cautious interpretation of FOIA. The appointment and work of the Special Master and the Court's informal efforts on the record have provided those officials with a fresh, dispassionate perspective, which has helped to stimulate the re-examination now in progress without any overbearing intrusion by the Court. Thus, it is apparent that while plaintiff-intervenor has prevailed, he has not prevailed entirely. In addition, both the plaintiff-intervenor and the defendant have benefited, along with the Court, from the very constructive services of the Special Master. Accordingly, the accompanying Order will assess one-half of the responsibility for the Special Master's fees upon each party.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 14th day of April, 1992, hereby

ORDERED: that the Special Master is entitled to fees of $43,527.00 for his services and $1,755.00 for the services of law

---

**6.** The order appointing the Special Master stated:

> Compensation for his service will be determined by the Court, with the party which does not substantially prevail paying the larger share. *See* 5 U.S.C. section 552(a)(4)(E); Fed.R.Civ.P. 53(a).

Order of January 15, 1988 at 2–3.

clerks and paralegals, and $932.19 for out of pocket expenses, totalling $46,214.19; and it is further

ORDERED: that plaintiff-intervenor shall pay fifty percent of the fees, totalling $23,107.10; and it is further

ORDERED: that defendant shall pay fifty percent of the fees, totalling $23,107.10.