Bernard FENSTERWALD, Jr., Plaintiff,

v.

UNITED STATES CENTRAL INTELLI-GENCE AGENCY, Defendant.

Civ. A. No. 75–897.

United States District Court, District of Columbia.

Dec. 22, 1977.

**668**

Bernard Fensterwald, Jr., pro se.

Michael J. Ryan, Asst. U. S. Atty., Washington, D. C., for defendant.

## MEMORANDUM

SIRICA, District Judge.

■ This Freedom of Information Act (FOIA), 5 U.S.C.A. § 552 (1977) suit [1] aptly illustrates the problems of proof and procedure confronting trial courts in determining whether claims of exemption are factually supported. The difficulty arises chiefly because, unlike in traditional litigation, the outcome of FOIA litigation turns on narrowly drawn factual determinations that are *not* the product of adversarial give and take. In traditional litigation, adversaries are equally in a position to get at the basic facts that are necessary for resolving contested issues. But this balanced situation simply does not exist in the FOIA context. FOIA litigation, in sharp contrast to other cases, poses a situation of severe adversarial imbalance. As the Court of Appeals stated in *Vaughn v. Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), "only one side to the controversy (the side opposing disclosure) is in a position confidently to make statements categorizing information." *Id.* at

343, 484 F.2d at 823–24. And as the Court further noted, "This factual characterization may or may not be accurate. It is clear, however, that [plaintiff] cannot state that, as a matter of his knowledge, this characterization is untrue." *Id.*

The difficulties stemming from the adversarial imbalance inherent in FOIA suits are heightened when the policies of the Freedom of Information Act are taken into account. Running through the FOIA is the broad and insistent objective of rooting out governmental secretiveness by mandating prompt disclosure of requested information unless the particular items being sought are shown to come within the terms of restrictively drawn exceptions. Yet despite this emphasis on disclosure, the nature of FOIA litigation paradoxically makes adverse parties dependent on the withholding authority for the very information they need to dispute the asserted claims of exemption.

■ To correct this inherent inconsistency and to restore some measure of adversarial proceeding to FOIA cases, the courts have adopted the practice of requiring the withholding agency to furnish particularized justifications to support asserted claims of exemption. *Vaughn, supra,* at 346–47, 484 F.2d at 826–27.[2] This approach is designed to make sure that adversary parties will obtain at least a sketch of the factual information necessary for contesting claimed exemptions. But this procedure is not altogether satisfactory. Requiring the withholding authority to come forward with adequately detailed and particularized justifications runs the risk of requiring the agency to disclose the very information that

---

**1.** At issue in this litigation is the exempt status of several hundred separately identified documents relating to the assassination of John Fitzgerald Kennedy. Suit was originally brought to obtain computer printouts that plaintiff requested as a prefatory step to obtaining the materials identified on the printouts. The agency later produced these printouts and, because it was aware of plaintiff's broader interests in the subject of the assassination, defendant included plaintiff among others who had earlier requested access to assassination-related materials. Treating plaintiff's request in this manner has led the agency to

identify a discreet number of items that went beyond the scope of plaintiff's original request. To this extent, the agency has correspondingly enlarged the scope of this lawsuit. Viewed in this way, plaintiff's suit was not mooted by the agency's production of the sought after computer printouts. By the same token the present scope of this lawsuit need not be further enlarged by plaintiff's unilateral request beyond the currently identified materials.

**2.** *See also EPA v. Mink,* 410 U.S. 73, 93, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

is claimed to be protected. This danger is particularly grave in instances where the requested material is withheld on the basis of the national security exemption.[3] The FOIA does not afford astute litigants a license to use the indexing and justification procedure in order to discern the contents of potentially exempt materials.

One way to overcome this difficulty is to employ the procedure of *in camera* examination. The FOIA expressly provides for *in camera* inspection of withheld items to assess whether claims of exemption are accurate.[4] Yet *in camera* review, like the indexing and justification method of proceeding, is not without inherent defects. One shortcoming implicit in the procedure lies in the fact that *in camera* inspection is generally conducted [5] "without [the] benefit of criticism and illumination by a party with the actual interest in forcing disclosure." *Vaughn, supra,* at 345, 484 F.2d at 825. A more glaring problem results from the fact that *in camera* examination entails an awesome "investment of judicial energy" where numerous documents are subject to dispute. *Id.* This problem is compounded where the particular items being withheld are claimed to be protected by a variety of different statutory exemptions.

■ The difficulties associated with *in camera* review were recently recognized in *Weissman v. CIA,* 184 U.S.App.D.C. 117, 565 F.2d 692 (1977). In that case, the Court of Appeals for this jurisdiction upheld a decision denying plaintiff's request for *in camera* proceedings. Plaintiff had requested the trial court "to check the truthfulness of Agency claims under each exemption, and to conduct a line-by-line analysis of documents withheld under each exemption to cull out any non-exempt material." *Id.,* at 121, 565 F.2d at 696. But the Court of Appeals held that intensive review of that kind is to be the exception rather than the rule in national security cases. As the

Court stressed: "neither the legislative history [of the FOIA], nor [relevant] court decisions, have indicated that it [is] appropriate for the District Courts to undertake line-by-line analysis of agency records in each [national security] case." *Id.,* at 122, 565 F.2d at 697. Only where "the record is vague" or where the agency's claims are "sweeping" or "suggestive of bad faith" is *in camera* inspection required "to look for segregable non-exempt matter." *Id.,* at 123, 565 F.2d at 698.

■ The meaning of *Weissman* is plain. *Weissman* counsels strongly against conducting *in camera* examination for the purpose of winnowing out potentially non-exempt tidbits from the documents of which they are part. But by the same token, *Weissman* does not rule out the procedure for reviewing a small yet representative sample of withheld materials in order to determine whether the agency's sketchy justifications are substantially overstated. The benefits of this limited and narrowly directed kind of examination are obvious and compelling. Foremost is the fact that this kind of limited review permits the court to test the validity of the agency's general theories of exemption by means of a sampling technique without requiring the agency to furnish highly detailed justifications at the risk of exposing potentially protected national security information. Furthermore, once the review is completed, the Court will then be in a position to extrapolate its conclusions from the representative sample to the larger group of withheld materials.

In the Court's view, this procedure commends itself for application in this case. Where, as here, the agency has tendered only skeletal justifications to support broad claims of exemption and where, as in this case, the withholding authority runs the distinct risk of compromising protected na-

---

**3.** 5 U.S.C. § 552(b)(1). Similar concerns arise where the claim of exemption is based on 5 U.S.C. § 552(b)(3) in tandem with 50 U.S.C. §§ 403(d)(3) & 403g.

**4.** 5 U.S.C. § 552(a)(4)(B).

**5.** *But see Rural Housing Alliance v. United States Department of Agriculture,* 164 U.S. App.D.C. 46, 502 F.2d 1179 (1974) (Bazelon, C. J., concurring).

tional security secrets if required to particularize its justifications in greater detail, the prudent course is to make a limited *in camera* review of a sampling of the withheld items.[6] Proceeding in this way will allow the fact-finder to render an informed judgment regarding the agency's general claims of exemption.[7]

An order in accordance with the foregoing will be issued of even date herewith.

### ORDER

Consistent with the Memorandum issued of even date herewith, it is by the Court this 22nd day of December, 1977,

ORDERED that defendant's motion to dismiss the action on the grounds of mootness be, and the same hereby is, denied; and it is

FURTHER ORDERED that defendant's motion for summary judgment be, and the same hereby is, held in abeyance pending the *in camera* review required by this Order; and it is

FURTHER ORDERED that plaintiff's motion for *in camera* inspection be, and the same hereby is, granted, as follows:

(A) Defendant shall, within thirty (30) days from the date hereof, deliver to the Court in a sealed unit a true copy of each of the items listed in Schedules A and B of plaintiff's motion to compel *in camera* inspection, with the exception of those documents that, as of the date of delivery, have already been disclosed to plaintiff in their entirety; *

(B) Defendant shall, with respect to each item delivered, identify those documents or particular portions thereof that, as of the date of delivery, remain classified;

(C) Defendant shall, with respect to each item delivered, place brackets around those portions that the agency deleted from the documents when it previously released them to plaintiff in part;

(D) Defendant shall attach to each item delivered a copy of the justification for withholding that document filed in its Document Disposition Index; PROVIDED THAT, in the event no justification has yet been filed for particular items because defendant has deferred to another agency for that purpose, defendant shall obtain that agency's justification and affix it to the appropriate withheld item. In that event, defendant shall file and serve upon plaintiff a copy of any justifications so obtained;

(E) Defendant shall immediately notify plaintiff when delivery of items for *in camera* inspection has taken place and plaintiff shall have twenty (20) days within which to file a statement of his views with respect to the justification offered for withholding each of the items delivered. Plaintiff shall state his views with respect to each separate justification on individual sheets of paper so that each statement may be attached to the pertinent justification.

---

**6.** *See Ash Grove Cement v. FTC,* 167 U.S.App. D.C. 249, 511 F.2d 815 (1975). In the Court's view, the items listed in schedules A and B of plaintiff's motion for *in camera* inspection appear representative of the several categories of withheld materials.

**7.** It is true that proceeding in this manner leaves counsel for plaintiff, who is the adversary party, more or less out of the picture. But nothing prevents counsel from conveying his views on the disclosure of each sample item based on the justifications that are presently part of the record.

* *See, e. g.* document identified as 957–927 AC on plaintiff's Schedule B which, according to defendant's Index, was released in its entirety.