COURT OF APPEALS OF VIRGINIA

Present:   Judges Malveaux, Raphael and Frucci
Argued at Arlington, Virginia


CITIZENS FOR FAUQUIER COUNTY

OPINION BY
v.        Record No. 0414-23-4          JUDGE STUART A. RAPHAEL
JULY 30, 2024

TOWN OF WARRENTON, VIRGINIA, ET AL.


FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Alfred D. Swersky, Judge Designate

Michael H. Brady (Dale G. Mullen; Michelle E. Hoffer; Whiteford,
Taylor & Preston, L.L.P., on briefs) for appellant.

John D. McGavin (Kara A. Schmidt; Martin R. Crim; McGavin,
Boyce, Bardot, Thorsen & Katz, PC; Sands Anderson P.C., on brief),
for appellees.

Amicus Curiae: Commonwealth of Virginia; Graham K. Bryant,
Deputy Solicitor General (Jason S. Miyares, Attorney General;
Erika L. Maley, Solicitor General; Michael Dingman, Assistant
Solicitor General, on brief), for appellees.

Amici Curiae: The Reporters Committee for Freedom of the Press
and 22 Media and Transparency Organization (Lin Weeks;
Bruce D. Brown; Katie Townsend; Gunita Singh; Reporters
Committee for Freedom of the Press, on brief), for appellant.

Amicus Curiae: Virginia Coalition for Open Government (Spencer
Gall; Tyler Demetriou; Deborah Murray; Southern Environmental
Law Center, on brief), for appellant.


        The petitioner here seeks mandamus against the Town of Warrenton under the Virginia

Freedom of Information Act to obtain emails relating to an Amazon datacenter project.

Petitioner challenges the Town's decision to withhold more than 3,100 emails based on several

statutory exemptions. One exemption permits withholding the "[w]orking papers and

correspondence of . . . the mayor *or* chief executive officer of any political subdivision." Code

§ 2.2-3705.7(2) (emphasis added).  Reading the *or* to mean *and*, the Town claimed the exemption for both its mayor and its town manager (the Town's chief-executive officer).  To avoid having to review all the withheld emails, the trial court invited the town attorney, over petitioner's objection, to choose a small sample of the emails that would be representative of the larger set.  The court then reviewed those emails in camera, without requiring the Town to provide any information to petitioner about what was in the emails, how they were chosen, or why they were representative.  Based on that sample, the trial court dismissed petitioner's mandamus action, concluding that all exemptions invoked by the Town were appropriate for the entire set of withheld emails.

Finding that the trial court committed two errors, we reverse and remand for further proceedings.  We hold that the correspondence exemption in Code § 2.2-3705.7(2) provides a single exemption for political subdivisions, like the Town, in which the mayor is not the chief-executive officer.  We further hold that the trial court erred when it permitted the Town to pick the sample for in camera review without providing any evidence to show that the sample was representative.

BACKGROUND

Petitioner Citizens for Fauquier County is a non-stock corporation formed in 1968 "with the mission to preserve the natural, historic and agricultural resources of Fauquier County."  In 2022, petitioner grew "deeply concerned" about a proposal by Amazon to construct a 220,000 square-foot datacenter "at the gateway to the Town [of Warrenton], where Blackwell Road and Lee Highway meet."  The project required a special-use permit.

Petitioner submitted two public-records requests to the Town—one in July and another in October 2022—seeking (among other things) information about the Amazon proposal and

- 2 -

correspondence between town officials and Amazon. The Town produced certain records but withheld others based on the following statutory exemptions:

- "Working papers and correspondence of . . . the mayor or chief executive officer of any political subdivision," Code § 2.2-3705.7(2);

- "[I]nformation protected by the attorney-client privilege," Code § 2.2-3705.1(2);

- "Proprietary information, voluntarily provided by private business pursuant to a promise of confidentiality from a public body," Code § 2.2-3705.6(3); and

- "Personnel information concerning identifiable individuals," Code § 2.2-3705.1(1).

In November 2022, the Town informed petitioner that "3,142 [e]mails or email chains" were being withheld under these exemptions. Petitioner claims that the "total" number of records withheld was 3,150, Pet. ¶ 26, which the Town admitted in its answer.

In pre-litigation discussions, the Town took the position that the working-papers-and-correspondence exemption in Code § 2.2-3705.7(2) allowed it to exempt the correspondence of *both* the mayor and the town manager, whom the Town charter identifies as the "chief executive officer." 1964 Va. Acts ch. 47, at 79 (§ 6-1). Petitioner responded that the Town could claim only one exemption and that, according to a 2002 opinion of the staff of the FOIA Advisory Council—Advisory Op. AO-02-02 (Oct. 30, 2002), https://perma.cc/3R9Z-7ACH—the exemption covered only the town manager (the chief-executive officer). The Town clerk was not moved, responding that the 2002 opinion "is clearly contrary to the plain meaning of the statute."

Dissatisfied with that response, petitioner filed a verified petition for mandamus. Petitioner disputed the Town's claim to two exemptions under Code § 2.2-3705.7(2). Petitioner also claimed that the Town was abusing the exemption by applying it to emails on which the chief executive was merely copied or that were received as part of a broader distribution. It

- 3 -

further claimed that the exemption was waived if the documents had been further disseminated "to various nongovernmental, non-exempt, third parties."

The trial court conducted a hearing on January 6, 2023, receiving without objection the pre-litigation correspondence between the parties. Neither party offered any other evidence. The town attorney informed the court that, the day before the hearing, the Town had voluntarily produced the eight emails of the mayor that the Town had withheld under the correspondence exemption. But the Town insisted that it was entitled to claim the exemption for both the mayor and the town manager.

When the trial court asked for a general description of the withheld documents, the town attorney proffered that they were emails about the steps for Amazon to gain approval for the proposed datacenter, the special-use permit that was required, and the tax revenue that might be generated by the project. The trial court then invited the town attorney to provide five exemplar emails for each exemption claimed so the court could review them in camera.

Petitioner's counsel countered that the Town had not carried its burden to prove that the documents were exempt. Petitioner also voiced concern about letting the town attorney pick the sample and about the small sample size. That process would leave petitioner "entirely in the dark" about what was being considered. The court asked, "How about 10 of each category, . . . if that makes you feel any better?" The court made clear that it was "not going to read 3,100-plus emails." The court added, "I trust Mr. Crim [the town attorney] to get me examples. Make it 10, Mr. Crim." Petitioner's counsel proposed that the court allow him to review the withheld documents under an attorney-eyes-only restriction. The trial court reserved considering that, saying it wanted to "look at them first and . . . decide."

The town attorney submitted the examples under seal for in camera review. Those documents remain under seal here. The emails themselves comprise 142 pages. The town

- 4 -

attorney represented that the emails spanned five subjects: "Town Manager Correspondence," "Attorney Client Privilege," "Taxes," "Trade Secrets," and "Personnel Correspondence." The Town did not submit an index to identify the persons in the *to*, *from*, or *cc* fields. Nor did the Town submit a letter or affidavit explaining how the Town chose the samples or why they were representative of the larger set.

In a supplemental brief, petitioner argued that the court should evaluate whether the correspondence exemption had been waived for emails that were disseminated to others. Petitioner also renewed its objections to the way the court was conducting the in camera review. Petitioner noted that the process gave the town attorney "complete power to cherry-pick" the sample and that the sample was not statistically representative. Petitioner proposed several alternative methods, such as requiring the town to supply a *Vaughn* index of the withheld documents, *see Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973); reviewing a "random sample" supported by an accompanying affidavit; or permitting attorney-eyes-only review by petitioner to enable the parties to jointly submit a representative sample.

At the next hearing, the trial court expressed concern about whether the correspondence exemption applied to the mayor or the town manager. The court discerned no standard to choose between those two officers. The court was "shocked" at the lack of authoritative guidance on the question.

In a supplemental response, the Town argued that "[n]either the FOIA Council nor the court has the power to require a local government officer to claim or designate ownership of an exemption." To the Town's thinking, that compelled only one conclusion: "Both the mayor and the chief executive officer of the Town (i.e., the Town Manager) are entitled to the exemption for correspondence and working papers."

The trial court agreed with the Town. It issued a letter opinion concluding that *or* means *and* in "the mayor or chief executive officer" exemption in Code § 2.2-3705.7(2). The court reasoned that, because there was no "standard" telling courts how to choose between the mayor and chief executive, the exemption must apply to both. And having reviewed the sample emails in camera, the court found that the Town's claimed exemptions were "appropriate." The court "recognize[d] the small sample size" but saw "no indication of bad faith on the part of the Town or its counsel" in choosing the sample. The court did not say whether the town manager had appeared on any email as simply a "cc" or "bcc," or as one among many recipients. Nor did the court address petitioner's waiver argument that an email would lose the exemption if disseminated to others.

The final order denied mandamus, denied petitioner's motion for reconsideration, and dismissed the petition with prejudice. Petitioner timely noted this appeal. Because the issues here affect other State and local officials, we invited the Attorney General to submit an amicus brief expressing the views of the Commonwealth. We also permitted the Office of Attorney General to participate in oral argument.

ANALYSIS

The General Assembly enacted the Virginia Freedom of Information Act ("FOIA"[1]), Code §§ 2.2-3700 to -3715, to "ensure[] the people of the Commonwealth ready access to public records in the custody of a public body or its officers and employees, and free entry to meetings of public bodies wherein the business of the people is being conducted." Code § 2.2-3700(B).

---

[1] Our appellate cases have referred to the Virginia Freedom of Information Act as both "FOIA," *e.g.*, *Montalla, LLC v. Commonwealth*, ___ Va. ___, ___ (May 9, 2024), and "VFOIA," *e.g.*, *Gloss v. Wheeler*, 302 Va. 258, 267 (2023). We use "FOIA" as our shorthand unless quoting another source. The federal authorities cited below as persuasive precedent also use the acronym "FOIA," but they do so in reference to the federal Freedom of Information Act, 5 U.S.C. § 552, not the Virginia act.

"The affairs of government are not intended to be conducted in an atmosphere of secrecy since at all times the public is . . . the beneficiary of any action taken at any level of government." *Id.* "Unless a public body . . . specifically elect[s] to exercise a[] [statutory] exemption . . . , every meeting shall be open to the public and all public records shall be available for inspection and copying upon request." *Id.*

The General Assembly also specified the interpretative rules to apply when courts evaluate an exemption claim. FOIA's provisions must be "liberally construed" in favor of public access. *Id.* No record may be withheld "unless specifically made exempt" by statute. *Id.* "Any exemption from public access to records must be narrowly construed." *Id.* And "the public body shall bear the burden of proof to establish an exclusion by a preponderance of the evidence." Code § 2.2-3713(E).

In 2016, the General Assembly amended FOIA to clarify that public bodies must produce requested records in redacted format if the record contains both exempt and non-exempt information unless the statutory exemption "applies to the entire content of the public record." 2016 Va. Acts chs. 620, 716 (Code § 2.2-3704.01). The amendment superseded the understanding set forth in *Virginia Department of Corrections v. Surovell*, 290 Va. 255, 262 (2015). The Court in *Surovell* found under the "plain language" of Code § 2.2-3705.2(6) that the Department of Corrections could withhold the entirety of its execution manuals without producing them in redacted format. *Id.* at 268. In response, the 2016 amendment "enacted a right of redaction, intended to reverse" *Surovell*. *Hawkins v. Town of S. Hill*, 301 Va. 416, 428 (2022); *see* 2016 Va. Acts chs. 620, 716 (adding Code § 2.2-3704.01). *Surovell* had also held that, although a trial court conducts a de novo review of an agency's exemption claims, "in doing so, the circuit court must accord 'substantial weight' to [the agency's] determinations." 290 Va. at 266 (quoting *Wolf v. Cent. Intel. Agency*, 473 F.3d 370, 374 (D.C. Cir. 2007)). The 2016

- 7 -

amendment superseded that interpretation too, stating that "[n]o court shall be required to accord any weight to the determination of a public body as to whether an exclusion applies." 2016 Va. Acts chs. 620, 716 (Code § 2.2-3713(E)). In the second enactment clause, the General Assembly said that the amendments were "declaratory of the law as it existed prior to the September 17, 2015 decision of the Supreme Court of Virginia in [*Surovell*]." *Id.*

Petitioners' assignments of error here present two threshold issues that we find dispositive of this appeal: first, whether the trial court erred in holding that Code § 2.2-3705.7(2) exempts the correspondence of both the mayor and the town manager; and second, whether the trial court erred by permitting the town attorney to select the representative sample for the court's in camera review. Both issues "present questions of law subject to de novo review." *Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 204 (2023).

A. *The exemption for the correspondence "of the mayor or chief executive officer" is disjunctive and does not entitle the Town to claim two exemptions (Assignment of Error 1).*

Code § 2.2-3705.7(2) exempts from mandatory disclosure the "[w]orking papers and correspondence of" various government officials, from the Governor of Virginia on down to the chief-executive officer of every political subdivision. The statute defines "[w]orking papers" as "those records prepared by or for a public official identified in this subdivision for his personal or deliberative use." Code § 2.2-3705.7(2). The Town claims that it did not withhold any of the disputed documents "as working papers." So only the "correspondence" exemption is at issue here. Although the statute does not define *correspondence*, no party disputes that *correspondence* includes emails.[2]

---

[2] At oral argument, petitioner's counsel disclaimed any contention that emails are not "correspondence."

In Virginia, cities and towns usually have "mayors," but counties and other political subdivisions do not.[3] We recently noted that "[t]own charters in Virginia come in many flavors, particularly when addressing town-manager succession." *Fauber v. Town of Cape Charles*, 79 Va. App. 660, 671 n.6 (2024). A similar variety applies to the function of the mayor. The charters for some cities and towns make the mayor the chief-executive officer.[4] Other charters designate the "town manager" or "city manager" as the chief-executive officer, bestowing other duties on the mayor.[5] The Town of Warrenton's charter follows the second model. The town manager is the "chief executive officer." 1964 Va. Acts ch. 47, at 79 (§ 6-1). The mayor is the "head of the Town for all ceremonial purposes," "presides at meetings of the Town Council," and is allowed to vote at council meetings only to break a tie. *Id.* (§ 5-2).

As noted above, the Town contends that the exemption in Code § 2.2-3705.7(2) for the correspondence of "the mayor or chief executive officer" provides *two* exemptions—one for the mayor and the other for the town manager. Relying on the 2002 staff opinion from the FOIA Advisory Council, petitioner counters that only one exemption is available and belongs to the person who functionally serves as the chief-executive officer.

---

[3] Title 15.2 uses the term "municipality" to refer to both a city and a town. *See* Code § 15.2-102. We use *municipality* in that context as well.

[4] *See, e.g.*, 2004 Va. Acts chs. 877, 898, § 5.01 (City of Richmond) ("The mayor shall be the chief executive officer of the city . . . ."); 1968 Va. Acts ch. 78, § 4 (City of Emporia) (same); 1976 Va. Acts ch. 629, § 3.5 (Town of Madison) ("The mayor shall be the chief executive officer of the town."); 2016 Va. Acts chs. 162, 311, § 8 (Town of South Hill) ("The mayor shall be the chief executive of the town.").

[5] 1976 Va. Acts ch. 669, § 4.02 (City of Alexandria) ("The city manager shall be the chief executive officer of the city."); 1982 Va. Acts ch. 657, § 3-3(A) (City of Danville) (same); 2018 Va. Acts chs. 91, 330, § 1(22) (Town of Amherst) ("The town manager shall be the chief executive officer of the town . . . ."); 2015 Va. Acts ch. 237, § 47 (Town of Victoria) (same).

As explained below, we agree with petitioner that only one exemption is available. But we hold that the statute entitles the Town to choose whether to apply the exemption to the mayor or the town manager.[6]

   *1. The Town may claim only a single exemption under Code § 2.2-3705.7(2).*

The text and interpretive rules governing the correspondence exemption in Code § 2.2-3705.7(2) show that, for municipalities with mayors, the exemption protects only a single official—"the mayor or the chief executive officer."

Start with the text. The *or* is disjunctive, showing that the exemption protects the mayor *or* the chief-executive officer. "[T]here is nothing in the statute to indicate that 'or' should be read to mean 'and.' Thus, 'or' is to be given its ordinary meaning." *Patterson v. Commonwealth*, 216 Va. 306, 307 (1975) (per curiam). "It is true that . . . whenever it is

_____

[6] No party contends that the dispute about the correspondence exemption was mooted when the Town voluntarily produced the mayor's emails after litigation began. This dispute remains very much alive. For one thing, if the statutory exemption applies only to the mayor's emails, the Town will have to produce the town manager's emails. At oral argument here, however, the Town said it was not ready to choose between the mayor and town manager if it had to pick one. For another thing, the "underlying dispute is 'capable of repetition, yet evading review.'" *Commonwealth v. Browne*, 303 Va. 90, 95 (2024) (quoting *Daily Press, Inc. v. Commonwealth*, 285 Va. 447, 452 (2013)). That "narrow exception [to mootness] applies when: '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Id.* (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). Although the exception should be applied "sparingly," *Browne*, 303 Va. at 93 (quoting *Daily Press*, 258 Va. at 452), "the controversy between the parties in this case fits squarely within the exception," *Daily Press*, 285 Va. at 452. The Town released the mayor's emails before the case could be fully adjudicated. Petitioner, a citizens' association formed nearly 60 years ago, can reasonably be expected to serve future FOIA requests for the mayor's correspondence. And the Town continues to insist that it can exempt both the mayor's emails and those of the town manager. So the dispute is likely to recur, and it would evade review if the Town could simply moot future lawsuits by voluntarily producing the mayor's emails after being sued. In addition, a defendant's "'voluntary cessation [of challenged conduct] does not moot a case' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *West Virginia v. EPA*, 597 U.S. 697, 720 (2022) (quoting *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)). *See Incumaa v. Ozmint*, 507 F.3d 281, 288-89 (4th Cir. 2007) (explaining that the voluntary-cessation doctrine is "closely related" to the capable-of-repetition doctrine).

necessary to effectuate the obvious intention of the legislature, disjunctive words may be construed as conjunctive, and vice versa." *S. E. Pub. Serv. Corp. v. Commonwealth ex rel. State Corp. Comm'n*, 165 Va. 116, 122 (1935). "But it is likewise well settled that 'courts will construe "or" as "and," and vice versa, only where from the context or other provisions of the statute, or from former laws relating to the same subject . . . , such *clearly appears to have been the legislative intent*.'" *Id.* (emphasis altered) (quoting 25 Reading Case Law, § 226, at 977 (1919)). "When, and only when, necessary to effectuate the *obvious intention* of the legislature, conjunctive words may be construed as disjunctive, and vice versa." *Id.* (emphasis added) (quoting 59 Corpus Juris § 584, at 986 (1932)). In short, "[t]he linguistic default is that 'and' is conjunctive and 'or' is disjunctive. It is only the anomalous cases in which courts transpose these words that require an explanation." *Barr v. Atl. Coast Pipeline, LLC*, 295 Va. 522, 553 (2018) (Kelsey, J., dissenting). We see nothing in the statute here to show "it was the 'obvious intention of the legislature' that the disjunctive 'or' was intended to mean 'and.'" *Williams v. Commonwealth*, 61 Va. App. 1, 12 (2012).

As petitioner points out, the staff of the FOIA Advisory Council reached the same conclusion more than 20 years ago. *See* AO-02-02, *supra* ("Taking these rules together with the narrow construction required of FOIA exemptions, this provision must be interpreted to present an alternative as to who may exercise the exemption at a local level—either the mayor or the chief executive officer, but not both."). While such opinions are not binding, appellate courts sometimes look to them as "instructive." *Wahlstrom*, 302 Va. at 205 n.10 (quoting *Transparent GMU v. George Mason Univ.*, 298 Va. 222, 243 (2019)). It is also noteworthy that the parties could not find any reported instance since that 2002 opinion in which a city or town claimed the correspondence exemption for *both* the mayor and the chief-executive officer.

The Town argues that, even if the *or* is disjunctive, the word is plagued by "inherent ambiguity." Town Br. 9. The Town says that an *or* could be "inclusive or exclusive." *Id.* at 8. For instance, "[w]hen a waiter offers a patron 'coffee or dessert,' an ordinary English speaker understands that he can have both coffee *and* dessert if he so chooses." *Rush v. Kijakazi*, 65 F.4th 114, 120 (4th Cir. 2023). By contrast, "if a waiter says that the breakfast special comes with either coffee or tea, he is probably using 'or' exclusively—the meal doesn't come with *both*." *Gonzalez v. State*, 207 A.3d 147, 155-56 (Del. 2019). The Town's argument that *or* can be inherently ambiguous finds support in legal lexicography. *See generally* Bryan A. Garner, *Garner's Dictionary of Legal Usage* 639 (3d ed. 2011) ("*Every* use of 'and' or 'or' as a conjunction involves *some* risk of ambiguity." (quoting Maurice B. Kirk, *Legal Drafting: The Ambiguity of "And" and "Or"*, 2 Tex. Tech. L. Rev. 235, 253 (1971))).

From that premise, the Town argues that the *or* should be read as inclusive because it is used that way elsewhere in Code § 2.2-3705.7(2). Here are all the *or*s, italicized, with the paragraph formatted to break out the component clauses:

> The following information contained in a public record is excluded from the mandatory disclosure provisions of this chapter but may be disclosed by the custodian in his discretion, except where such disclosure is prohibited by law.
>
> . . . .
>
> (2) Working papers and correspondence of the Office of the Governor, the Lieutenant Governor, *or* the Attorney General;
>
> the members of the General Assembly, the Division of Legislative Services, *or* the Clerks of the House of Delegates *or* the Senate of Virginia;
>
> the mayor *or* chief executive officer of any political subdivision of the Commonwealth; *or*
>
> the president *or* other chief executive officer of any public institution of higher education in the Commonwealth.

- 12 -

Code § 2.2-3705.7(2) (emphases added). The Town says that the other *or*s in subsection 2 are generally inclusive. For instance, the Governor *and* the Attorney General enjoy the exemption, not just one of them. So the mayor *and* the chief-executive officer of a city or town must likewise enjoy it, the Town reasons.

We are not persuaded. The Town's construction leads to the anomaly that cities and towns with ceremonial mayors enjoy *two* exemptions while every other political subdivision gets one. When asked at oral argument why the General Assembly might have intended that result, the Town said that ceremonial mayors will generally have fewer letters and emails to protect than chief-executive officers. But that hardly explains the anomaly; it makes it more confounding.

Perhaps more importantly, the premise of the argument spells its demise. The premise is that *or* is ambiguous because it could be inclusive or exclusive. We can accept that premise and acknowledge the possibility that the *or* here could be read as inclusive or exclusive. But if so, the FOIA rules of construction make this an easy call, "put[ting] the interpretative thumb on the scale in favor of disclosure." *Fitzgerald v. Loudoun Cnty. Sheriff's Office*, 289 Va. 499, 505 (2015). "*Any* exemption from public access to records or meetings shall be *narrowly construed*." Code § 2.2-3700(B) (emphases added). A narrow construction here requires reading the *or* as exclusive, limiting it to the mayor *or* the chief-executive officer, not both.

> 2. *The Town must choose whether the exemption applies to the mayor or the town manager (the Town's "chief executive officer").*

Although the *or* is both disjunctive and exclusive, we disagree with the FOIA Council staff opinion that courts must require municipalities with ceremonial mayors to apply the exemption *only* to the chief-executive officer. The advisory opinion reasoned that the reference to "or chief executive officer" means the exemption belongs to whoever "functionally acts" as the chief executive. AO-02-02, *supra*.

- 13 -

We think that reading goes too far because it renders the term *mayor* meaningless when applied to municipalities with mayors who are not the chief executive. It is a "settled rule in this Commonwealth that every provision in or part of a statute shall be given effect if possible." *Va. Elec. & Power Co. v. State Corp. Comm'n*, 300 Va. 153, 163 (2021) (quoting *Travelers Prop. Cas. Co. v. Ely*, 276 Va. 339, 345 (2008)). Under this "elementary canon of construction[,] . . . '[n]o sentence, clause or word should be construed as unmeaning or surplusage[] if a construction can be legitimately found [that] will give force to and preserve all the words of the statute.'" *King v. Empire Collieries Co.*, 148 Va. 585, 589-90 (1927) (quoting Black Inter. Laws 83). The "Surplusage Canon" is hornbook law. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012) ("If possible, every word and every provision is to be given effect . . . .").

We see no difficulty giving meaning to the word *mayor* when applying the exemption to municipalities that have a mayor and a chief executive. The municipality, through its records custodian, may choose whether the exemption applies to the mayor's correspondence or that of the chief executive. Indeed, that reading fits well with the first sentence of Code § 2.2-3705.7, which authorizes "the custodian in his discretion" to withhold exempt records from mandatory disclosure. When the plain language of subdivision (2) refers to the correspondence of "the mayor or chief executive officer," the natural reading gives the custodian the "discretion" to choose which officer gets the exemption.

That reading is bolstered by comparing how the same subsection exempts the working papers and correspondence of "the president or *other* chief executive officer of any public institution of higher education in the Commonwealth." Code § 2.2-3705.7(2) (emphasis added). The use of *other* as an adverb in that clause, modifying "chief executive officer," makes clear that the exemption applies to a president only when the president is *also* the chief-executive

officer of the educational institution, not just a ceremonial officer. For if the president were not actually the chief-executive officer, the *other* would be meaningless.

Now, if the text of the political-subdivision clause were worded the same way, exempting the correspondence of the mayor or *other* chief-executive officer, then it would make sense that the mayor must *also* be the chief-executive officer. But the *other* is missing in that clause. And that is no accident; the General Assembly specifically removed it. When FOIA was first enacted in 1968, the exemption applied to the "[m]emoranda, working papers and correspondence held by the Office of the Governor or the Mayor or *other* chief executive officer of any political subdivision of the State." 1968 Va. Acts ch. 479, § 1(b)(4) (codified at 2.1-342(b)(4)) (emphasis added). In 1974, the heads of public educational institutions were added to the list, using parallel language. 1974 Va. Acts ch. 332 (Code § 2.1-342(b)(4)) (adding "the President or *other* chief executive officer of any State-supported institutions of higher education" (emphasis added)). But in 1999, while transplanting the exemption from Code § 2.1-342(b)(4) to § 2.1-342.01(A)(6), the legislature dropped *other* in the political-subdivision clause but kept it for the heads of public institutions of higher education. As revised, the exemption applied to "the mayor or [~~other~~] chief executive officer of any political subdivision of the Commonwealth; or the president or *other* chief executive officer of any public institution of higher education." 1999 Va. Acts ch. 703, at 1155, 1163 (emphasis added), 1999 Va. Acts ch. 726, at 1224, 1232 (emphasis added). And that formulation was retained during subsequent amendments and recodification. *See* 2001 Va. Acts ch. 844 (moving the exemption from Code § 2.1-342.01(A)(6) to § 2.2-3705(6)); 2004 Va. Acts ch. 690 (moving the exemption from Code § 2.2-3705(6) to § 2.2-3705.7(2)).

"[W]hen the General Assembly has used specific language in one instance but omits that language or uses different language when addressing a similar subject elsewhere," we "must presume that the difference in the choice of language was intentional." *Morgan v.*

- 15 -

*Commonwealth*, 301 Va. 476, 482 (2022) (quoting *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011)). When that happens, "'it is evident that the General Assembly "knows how" to include such language in a statute to achieve an intended objective,' and therefore, omission of such language . . . 'represents an unambiguous manifestation of a contrary intention.'" *Id.* (quoting *Brown v. Commonwealth*, 284 Va. 538, 545 (2012)). That principle requires that we respect the General Assembly's choice to delete *other* in the correspondence exemption for the heads of political subdivisions.

Accordingly, we hold that a municipality with both a mayor and a chief-executive officer may elect which of them receives the exemption under Code § 2.2-3705.7(2).[7] But it cannot claim the exemption for both officers.

> B. *The court erred in its sampling methodology because the Town never explained why the sample it picked was representative of the withheld records (Assignments of Error 2-3).*

Petitioner contends that the trial court erred when it allowed the town attorney to pick the emails that served as the representative sample for in camera review. It argues that the Town failed to show how it chose the emails and why the sample was representative of the entire set of withheld emails. Petitioner maintains that the Town failed to carry its burden of proving that all of the withheld records are exempt from mandatory disclosure. We agree.

Whether to undertake in camera review of disputed records and how to conduct such review are matters committed to the trial court's sound discretion, and we will not disturb the trial court's judgment in such matters absent an abuse of discretion. *See Bowman v.*

---

[7] The FOIA Council's staff opinion expressed concern that a municipality might "switch back and forth as to which public official may exercise the exemption." AO-12-02, *supra*. So the staff concluded that once the exemption is assigned to a particular office, it may not be reassigned without a "charter" amendment by the General Assembly. *Id.* This case presents no occasion to reach that question. We thus express no opinion about whether or how a municipality might properly change the beneficiary of the exemption as between the mayor and chief-executive officer.

*Commonwealth*, 248 Va. 130, 135 (1994). Still, the abuse-of-discretion standard does not give a trial court carte blanche to "do whatever pleases it." *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011). "Rather, 'when a decision is discretionary . . . . "the court has a range of choice, and . . . its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law."'" *Shebelskie v. Brown*, 287 Va. 18, 26 (2014) (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212-13 (2013)). "A trial court abuses its discretion by (1) failing to consider a significant relevant factor, (2) giving significant weight to an irrelevant or improper factor, (3) committing a clear error of judgment in assigning weight to all proper factors, or (4) making a mistake of law." *Cornelius v. Commonwealth*, 80 Va. App. 29, 41 n.13 (2024).

Having determined that in camera review of a representative sample was needed to test the Town's exemption claims for 3,100-plus emails, the trial court needed to do more than let the town attorney pick the representative sample. At a minimum, the court should have required the town attorney to explain how he chose the sample and why the sample was representative of the whole. *See Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 955 F. Supp. 2d 4 (D.D.C. 2013) ("Agencies using sampling to comply with FOIA have been cautioned to provide 'an explanation of how the documents were selected, in order to ensure that the documents in the index were truly representative.'" (quoting *Shannahan v. IRS*, 672 F.3d 1142, 1151 (9th Cir. 2012), *aff'g Shannahan v. IRS*, 680 F. Supp. 2d 1270 (W.D. Wash. 2010))).

In *Shannahan*, for instance, the trial court rejected the IRS's claim that the sample it used was representative because the IRS did not explain how it picked the sample nor why the sample was representative. 672 F.3d at 1147.[8] After the IRS supplied that information by affidavit and

---

[8] For the lower court opinion, see *Shannahan v. IRS*, No. C08-0560JLR, 2009 U.S. Dist. LEXIS 99666, at *4 (W.D. Wash. Sept. 3, 2009) ("[T]he court agrees that the IRS has not

- 17 -

the requester stopped challenging the sample's representative nature, the trial court found that the sample was representative and that the agency had properly exempted the entire set of records. *Shannahan*, 680 F. Supp. at 1272.

Code § 2.2-3713(E) placed the burden on the Town to prove by a "preponderance of the evidence" that all the withheld emails were exempt from mandatory disclosure. As in *Shannahan*, the Town could not carry its burden without explaining how it picked the sample or why the sample was representative of the entire set. And without that evidence in the record, we cannot evaluate if the trial court erred in finding that the Town carried its burden.[9]

In short, the trial court abused its discretion in finding the sample to be representative. The trial court erred by "failing to consider a significant relevant factor," *Cornelius*, 80 Va. App. at 41 n.13, namely, that there was no evidence in the record that the sample submitted by the town attorney was representative of the entire set of emails that the Town withheld.

C. *The trial court must reevaluate the Town's exemption claims.*

We now turn to the appropriate remedy. Petitioner argues that the proper appellate remedy is to order the Town to produce all the withheld emails. Because the Town bore the burden to prove that the withheld documents are exempt, petitioner reasons that the Town's failure to carry its burden forfeits the exemption claims.

---

identified how it selected the documents described in the *Vaughn* index. . . . Ms. Mahaney [the IRS's agent] does not identify what method she used to select documents. . . . On this showing, the court cannot evaluate whether the *Vaughn* index constitutes a representative sample of the withheld documents.").

[9] Petitioner has not contended that the town attorney acted in bad faith, nor does the record suggest any bad faith. But the problem here is the Town's failure of proof, not its good faith or bad faith. To be sure, every advocate has a "duty of candor to the tribunal." Va. R. Pro. Conduct 3.3 cmt. 1. But the advocate is not supposed to "vouch for the evidence submitted in a cause; the tribunal is responsible for assessing its probative value." *Id.* Neither the trial court nor we can perform that function when there is no such "evidence submitted."

- 18 -

We reject that draconian remedy because "the trial court was without clear guidance" and "did not have the benefit" of this ruling. *Hawkins*, 301 Va. at 433. As the trial court lamented, there was little guidance on the correspondence exemption in Code § 2.2-3705.7(2). And our appellate case law has provided little guidance on the proper method to evaluate exemption or privilege claims when thousands of documents are involved. We will therefore remand this case for the trial court to reevaluate the Town's exemption claims for all withheld emails.

D. *Options the trial court may consider when conducting its exemption review*.

We now address the main issue that "will arise on remand." *Hale v. Washington Cnty. Sch. Bd.*, 241 Va. 76, 81-82 (1991) (setting forth the standards for the trial court to apply on remand when considering the availability of injunctive relief, civil penalties, and attorney fees under FOIA).

1. *The option of in camera review*.

As a starting point, all agree that in camera review is one appropriate method for a trial court to determine if records have been properly withheld as exempt or privileged. *See Hawkins*, 301 Va. at 433 ("[A]s a threshold matter[,] a court's *in camera* review of the records constitutes a proper method to balance the need to preserve confidentiality of privileged materials with the statutory duty of disclosure under VFOIA." (alterations in original) (quoting *Bergano v. City of Va. Beach*, 296 Va. 403, 410 (2018) (per curiam))). Our Supreme Court has at times "encouraged" in camera review. *Surovell*, 290 Va. at 269 (quoting *LeMond v. McElroy*, 239 Va. 515, 521 (1990)). In camera review also ensures that the documents at issue are preserved for appellate review. *E.g.*, *Moore v. Maroney*, 258 Va. 21, 25-27 (1999) (not reaching whether the disputed records were confidential because the petitioner failed to tender them for in camera inspection). "Routinely, confidential records are filed for in camera inspection by a trial court and, if necessary, by an appellate court." *LeMond*, 239 Va. at 520 (emphasis altered); *see also*

*Lemons v. Commonwealth*, 14 Va. App. 1009 (1992) (en banc) (vacating conviction and directing trial court to conduct in camera review of alleged *Brady* material).

But a trial court's decision to conduct in camera review "is a discretionary" one. *Bowman*, 248 Va. at 135; *Meeropol v. Meese*, 790 F.2d 942, 958 (D.C. Cir. 1986) (same); *Young v. Cent. Intel. Agency*, 972 F.2d 536, 538 (4th Cir. 1992) (same). "Plainly, in some situations, *in camera* inspection will be necessary and appropriate. But it need not be automatic. An agency should be given the opportunity, by means of detailed affidavits or oral testimony, to establish to the satisfaction of the trial court that exemptions have been properly claimed." *EPA v. Mink*, 410 U.S. 73, 93 (1973). Whether the trial court has "properly exercised" discretion in requiring or not requiring in camera review "will depend on the specific factors of each case." *Bowman*, 248 Va. at 135-36; *Young*, 972 F.2d at 538 (applying "abuse of discretion standard").

We appreciate the trial court's reluctance to undertake in camera review of *all* the emails at issue here. The court was understandably exasperated by the prospect, telling the parties, "I am not going to read 3,100-plus emails. I'm just not going to do it. I don't have the time to do it, nor the inclination to do it." The trial court was not alone. Courts have recognized for a half-century that in camera review in large-document cases "may be very burdensome." *Vaughn*, 484 F.2d at 825.

Not only that, in camera review can be problematic for other reasons. It "is necessarily conducted without benefit of criticism and illumination by a party with the actual interest in forcing disclosure." *Id.* "[W]here the documents in issue constitute hundreds or even thousands of pages, it is unreasonable to expect a trial judge to do as thorough a job of illumination and characterization as . . . a party interested in the case." *Id.* Worse, the prospect of such in camera review can create perverse incentives for a party to over-designate documents as exempt or privileged:

> If the morass of material is so great that court review becomes impossible, there is a possibility that an agency could simply point to selected, clearly exempt portions, ignore disclosable sections, and persuade the court that the entire mass is exempt. Thus, as a tactical matter, it is conceivable that an agency could gain an advantage by claiming overbroad exemptions.

*Id.* at 826.

But other tools can mitigate the need for in camera review of voluminous records.

### 2. *The option of requiring a Vaughn index.*

In *Vaughn*—a seminal FOIA case decided more than 50 years ago—the D.C. Circuit explained that district courts could reduce if not avoid the need for in camera review by requiring a detailed index of documents that have been withheld as exempt. *Id.* at 826-27. *Accord Surovell*, 290 Va. at 269 (noting that in camera review may be unnecessary if the government provides a "precise description of the confidential records"). The opinion in *Vaughn* gave rise to what judges and lawyers nationwide now call a "*Vaughn* index." *See Devonshire v. EurAuPair Int'l, Inc.*, 40 Va. Cir. 149, 149 (Fairfax 1996); *Reno Newspapers, Inc. v. Gibbons*, 266 P.3d 623, 628 (Nev. 2011); *see also Department of Justice Guide to the Freedom of Information Act, Litigation Considerations Part 2* 27 (2024) ["DOJ FOIA Guide"] (stating that a *Vaughn* index is "commonly used" and specifies "in detail which portions of a document it has withheld, and to correlate each withheld document (or portion thereof) with a specific FOIA exemption and the relevant part of the agency's nondisclosure justification"), https://perma.cc/9E9A-MPQE. The term has its own dictionary entry. *See Vaughn* index, *Black's Law Dictionary* (12th ed. 2024). It is also known as a "privilege log." *E.g.*, *Allied Concrete Co. v. Lester*, 285 Va. 295, 303 (2013).

A *Vaughn* index should contain sufficient information to show that the document has been properly withheld as exempt or privileged. *See, e.g.*, *Goodrich Corp. v. Clark*, 837 N.E.2d 953, 1045-46 (Ill. App. Ct. 2005) (listing sample categories); *City of Colorado Springs v. White*, 967 P.2d 1042, 1053-54 (Colo. 1998) (same). A *Vaughn* index for a withheld email (and for

- 21 -

emails within an email chain) would typically identify the control number of the document;[10] the date; the author (the person in the "from" field); the persons to whom the document was addressed (the persons in the "to" field); the names of persons who were copied or blind-copied ("cc's and "bcc's"); the exemption claimed; and a brief explanation showing why the exemption applies.

We do not "spell out an exhaustive list of what such a log must contain or the precise form that this log must take because, depending on the circumstances of each case, what constitutes an adequate log will vary." *Reno Newspapers*, 266 P.3d at 629. For instance, if an exemption can be waived by dissemination, the log may need to disclose whether the document was disseminated to others and, if so, when and to whom.[11] "[I]t is the function of a *Vaughn* index rather than its form that is important, and a *Vaughn* index is satisfactory as long as it allows a court to conduct a meaningful de novo review of the agency's claim of an exemption." *Voinche v. FBI*, 412 F. Supp. 2d 60, 65 (D.D.C. 2006). The categories needed in a particular *Vaughn* index can be specified by the trial court if the parties cannot agree. And "a court can order an agency to prepare a more detailed *Vaughn* index if the one before it is not detailed enough to determine whether FOIA exemptions were legitimately claimed." *Id.*

---

[10] Counsel for the Town said at oral argument that the Town could easily assign control numbers or "Bates-stamp numbers" to the withheld documents. *See Bates-stamp number*, *Black's Law Dictionary*, *supra* ("The term gets its name from a self-advancing stamp machine made by the Bates Manufacturing Company.").

[11] Petitioner alleged that such a waiver occurred here. Pet. ¶¶ 83-86. *See* 1982-83 Op. Va. Att'y Gen. 724, 725 (Feb. 15, 1983) ("[O]nce the chief executive officer of the county disseminates any records held by him, those records lose the [working-papers-and-correspondence] exemption . . . ."); 1981-82 Op. Va. Att'y Gen. 438, 438 (Feb. 1, 1982) (same). *See also* 1982-83 Op. Va. Att'y Gen. 729, 729-30 (Oct. 21, 1982) (opining that a school board's superintendent is the "chief executive officer" entitled to FOIA's working-papers-and-correspondence exemption, but "once the superintendent disseminates records held by him to the school board[,] those records lose the exemption"). As noted above, however, the trial court did not address this question.

A *Vaughn* index "serves at least three purposes." *Lykins v. U.S. Dep't of Justice*, 725 F.2d 1455, 1463 (D.C. Cir. 1983); *Vaughn* index, *Black's Law Dictionary*, *supra* (same). First, "it forces the government to analyze carefully any material withheld." *Lykins*, 725 F.2d at 1463. Doing so helps the government avoid hasty mistakes and snap judgments.

Second, a *Vaughn* index "enables the trial court to fulfill its duty of ruling on the applicability of the exemption." *Id.* If the index is done well, the trial judge can readily determine if the government has credibly asserted an exemption. The index can thus obviate the need for in camera review, or at least limit such review to those records that present close calls. *See Solers, Inc. v. IRS*, 827 F.3d 323, 328 (4th Cir. 2016) ("A *Vaughn* index is 'designed to enable the district court to rule on a privilege without having to review the document itself' and thus functions as 'a surrogate for the production of documents for in camera review.'" (quoting *Ethyl Corp. v. U.S. EPA*, 25 F.3d 1241, 1249 (4th Cir. 1994))).

And third, a *Vaughn* index "enables the adversary system to operate by giving the requester as much information as possible." *Lykins*, 725 F.2d at 1463. After reviewing the index, the requester may be satisfied that the government has properly withheld documents as exempt, allowing the parties to avoid or at least narrow the controversy. *See Vaughn*, 484 F.2d at 827 ("Opposing counsel should consult with a view toward eliminating from consideration those portions that are not controverted and narrowing the scope of the court's inquiry."). For those records that remain in dispute, the index may provide the challenger clearer grounds on which to "present his case to the trial court." *Lykins*, 725 F.2d at 1463. The trial judge thus enjoys the "benefit of criticism and illumination" from the opposing party, something that is missing during in camera review of the records alone. *Vaughn*, 484 F.2d at 825.

Judge Wetsel captured these ideas more than two decades ago in explaining why a *Vaughn* index (which he called a "privilege log") can be helpful in resolving FOIA-exemption claims:

> Each claim of privilege for a document is document specific, and a party cannot reasonably respond to a denial of access or the court reasonably rule, unless the existence and general nature of the document is disclosed. If the Court does not have at least a general idea of the contents of the document, it cannot reasonably determine whether it may be in the class of documents potentially exempt from disclosure under the Freedom of Information Act.

*Shenandoah Publ. House Inc. v. City of Winchester*, 52 Va. Cir. 111, 113 (City of Winchester 2000).

To be clear, "[a] *Vaughn* index is not required in every FOIA case." *Casillas v. U.S. Dep't of Justice*, 672 F. Supp. 2d 45, 48 (D.D.C. 2009); *Reno Newspapers*, 266 P.3d at 629 (same). A *Vaughn* index is simply one of the available tools in the trial court's toolbox. "An itemized '*Vaughn* Index' is not essential in every instance, as long as the nature of the withheld information is adequately described through the agency's submissions, or is confirmed by the court through in camera review." DOJ FOIA Guide, *supra*, at 33 & n.94 (collecting cases). For instance, "there is no need for a *Vaughn* index where there are no responsive records to describe." *Casillas*, 672 F. Supp. 2d at 48. But a "requesting party generally is entitled to a log unless, for example, the state entity withholding the records demonstrates that the requesting party has sufficient information to meaningfully contest the claim of confidentiality without a log." *Reno Newspapers*, 266 P.3d at 629.[12]

---

[12] Importantly, a *Vaughn* index is used for "litigation in court and not proceedings before the agency." *Nat'l Res. Def. Council v. Nuclear Reg. Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000); *see also Reno Newspapers*, 266 P.2d at 631 ("[A] *Vaughn* index is not required outside of the litigation context."); *Farley v. Worley*, 599 S.E.2d 835, 848 (W. Va. 2004) ("not required at the administrative stage of FOIA proceedings"). To withhold records as exempt in the first instance, our statute requires only that the government "identify with reasonable particularity the

*3. The option of random or representative sampling.*

When the records claimed as exempt are so numerous that individual review would be unduly burdensome, the court may consider the option of sampling. *See, e.g.*, *Bonner v. U.S. Dep't of State*, 928 F.2d 1148, 1151-52 (D.C. Cir. 1991); *Reno Newspapers*, 266 P.3d at 629 n.3; DOJ FOIA Guide, *supra*, at 34 n.95 (collecting cases).

One such method is "*random* sampling," which "involves a mechanical selection process designed simply to present a decisionmaker . . . with a sample of more manageable size." *In re U.S. Dep't of Def.*, 848 F.2d 232, 237 (D.C. Cir. 1988). Random sampling was used in *Meeropol*, where the children of Julius and Ethel Rosenberg sought law-enforcement records from the investigation and prosecution of their parents. 790 F.2d at 945. The government's search "retrieved approximately 500,000 pages of records," from which the FBI withheld "approximately 20,000" pages. *Id.* at 946, 948. At the time, the request may have been "the most demanding FOIA request ever filed." *Id.* at 951. To vet whether the exemptions were properly claimed, the district judge ordered the FBI "to submit every one-hundredth page for *in camera* examination." *Id.* at 948. "In addition to the sample, the FBI submitted public affidavits describing the exemptions claimed and correlating them with each page in the sample to which they related." *Id.* at 957. The district judge then reviewed the "301-page sample" in camera "and concluded that the statutory exemptions had been properly invoked." *Id.* at 948. In finding that the district court did not abuse its discretion, the D.C. Circuit concluded that the 1% sample size was not too small in relation to the vast number of records at issue. *Id.* at 958-59.

---

volume and subject matter of withheld records, and cite, as to each category of withheld records, the specific Code section that authorizes the withholding of the records."
Code § 2.2-3704(B)(1). "In other words, the *Vaughn* index is implicated by FOIA litigation—not simply by a FOIA denial." *Farley*, 599 S.E.2d at 849.

Another method is "representative sampling," in which "the authority charged with preparing the sample scrutinizes an entire document pool[] and includes in the sample items which in its judgment are typical of broader classes of documents within the pool." *U.S. Dep't of Def.*, 848 F.2d at 237. "The sifting process of representative sampling, when properly executed, has the advantage of assuring that the documents in the sample do indeed typify the broader pool." *Id.* "By contrast, random sampling . . . although appropriate in many cases, may overlook distinctive documents or accidentally shield patently unexceptional documents from FOIA release." *Id.*

As then-Judge Ruth Bader Ginsburg explained in *Bonner*, "[r]epresentative sampling allows the court and the parties to reduce a voluminous FOIA exemption case to a manageable number of items that can be evaluated individually through a *Vaughn* index or an in camera inspection." 928 F.2d at 1151. "If the sample is well-chosen, a court can, with some confidence, 'extrapolate its conclusions from the representative sample to the larger group of withheld materials.'" *Id.* (quoting *Fensterwald v. Cent. Intel. Agency*, 443 F. Supp. 667, 669 (D.D.C. 1977)). Of course, such sampling "involves a trade-off between the high degree of confidence that comes from examining every item for which exemption is claimed, and the limitations of time and resources that constrain agencies, courts, and FOIA requesters alike." *Id.* "[T]he technique will yield satisfactory results only if the sample employed is sufficiently representative, and if the documents in the sample are treated in a consistent manner." *Id.*

But the process of selecting a representative sample can be fraught with risk, as it was here when the trial court let the Town pick the sample without explaining how the emails chosen were representative of the much larger set. The "integrity" of the sample may be challenged "when [the] government, rather than [the] court, selects [the] sample[]," which is not a problem when "the sampling [is] random." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1490 (D.C.

Cir. 1984); *see Lame v. U.S. Dep't of Justice*, 654 F.2d 917, 928 n.11 (3d Cir. 1981) ("We observe the obvious danger that may be present in a 'sampling' case: the government may choose to submit information on 'representative' documents for which its claims of exemption are the most persuasive. If the district court wished to examine only a portion of the records, it, not the government, should have chosen the sample.").

Those potential integrity problems in the selection process may not be insurmountable. As noted above, the trial court in *Shannahan* was satisfied that the sample was representative after the government submitted a detailed affidavit explaining how it chose the sample, prompting the requester to drop its objection that the sample was not representative. *Shannahan*, 680 F. Supp. 2d at 1272. Similarly, in *Bonner*, the sample was deemed representative when it "was selected by agreement of the parties." 928 F.2d at 1151. Still, that sample proved unusable when the government withdrew its exemption claims for some of the records in the sample. That change in position "undermined the confidence . . . that the [government] correctly invoked FOIA to shield information contained in the . . . documents *not* described in the *Vaughn* index." *Id.* (emphasis added).

If the trial court here determines that random or representative sampling is necessary because of the large number of records at issue, the trial court "has discretion to choose which method is best." *U.S. Dep't of Def.*, 848 F.2d at 237-38. Whichever method is used, however, the trial court must consider the "error rate," *Bonner*, 928 F.2d at 1154, that is, the percentage of documents in the sample for which the exemption has been improperly claimed. The court in *Bonner* did not set a minimum error rate, but it said that "an error rate of 25% in a representative sample [would be] 'unacceptably high.'" *Id.* (quoting *Meeropol*, 790 F.2d at 960). By contrast, another court found that "[t]wo mistakes out of 168 documents, . . .—an error rate of just over one percent—does not come close to the kind of error rate that has prompted courts to require

- 27 -

further disclosures." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Justice*, 48 F. Supp. 3d 40, 52 (D.D.C. 2014).

This case does not require that we define the outer limits of discretion should the trial court determine to use random or representative sampling to test the Town's exemption claims. The details must be left to the trial court if it finds that sampling is warranted.

Nor do we foreclose other options that the trial court might consider to test the Town's exemption claims. There is no one-size-fits-all solution when an enormous quantity of records has been withheld as exempt or privileged. The trial court's discretion, while not unbounded, is quite vast. But we generally "serve as 'a court of review, not of first view.'" *Cal. Condo. Ass'n v. Peterson*, 301 Va. 14, 23 (2022) (quoting *Bailey v. Loudoun Cnty. Sheriff's Off.*, 288 Va. 159, 181 (2014)). So we leave it to the trial court to fashion the appropriate procedure in the first instance.

E. *Remaining issues reserved for remand.*

1. *Whether the exemption covers emails sent to a distribution list, cc, or bcc.*

Petitioner requests that we decide another issue that it says will likely arise on remand: whether the correspondence exemption applies to emails sent to a distribution list that merely includes the covered officer, or emails in which that officer is simply copied or blind-copied. As petitioner points out, there is a dearth of authority on that question. *See Hill v. Fairfax Cnty. Sch. Bd.*, 83 Va. Cir. 172, 177 (Fairfax 2011) (holding that the working-papers-and-correspondence exemption did not apply to emails on which the division superintendent "was merely copied as a recipient"), *aff'd on other grounds*, 284 Va. 306 (2012). But it would be imprudent for us "to decide the issue in a vacuum, without any idea of the precise nature of the document with which

we are dealing." *LeMond*, 239 Va. at 520.  And since the trial court did not rule on this question, prudence further dictates letting the trial court have the first crack at it on remand.[13]

### 2. Whether petitioner is entitled to attorney fees.

In anticipation of prevailing here, petitioner asks that we award it reasonable attorney fees incurred "both at trial and on appeal."  Citizens Br. 50.  Without a doubt, petitioner has substantially prevailed in this appeal.  But to award attorney fees now would be premature.

Code § 2.2-3713(D) sets forth the standard for when a successful FOIA petitioner may recover its attorney fees.  A fee award depends on the petitioner's (1) having been denied its rights under FOIA, and (2) substantially prevailing on the merits of its claims:

> If the court finds the *denial* [of the rights and privileges conferred by this chapter] *to be in violation* of the provisions of this chapter, the petitioner shall be entitled to recover reasonable costs, including . . . attorney fees from the public body *if the petitioner substantially prevails on the merits of the case*, unless special circumstances would make an award unjust.

Code § 2.2-3713(D) (emphases added).  When a plaintiff substantially prevails in showing that its FOIA rights were denied, the trial court should award attorney fees "unless unusual, uncommon, noteworthy, or extraordinary circumstances make such an award unjust." *Wahlstrom*, 302 Va. at 217 n.15; *see also Hill v. Fairfax Cnty. Sch. Bd.*, 284 Va. 306, 314-15 (2012) ("As used in Code § 2.2-3713(D), 'the merits of the case' plainly refers to the object of the action in which a claim that the FOIA has been violated is made, and that the party has prevailed in proving that there was some violation of the FOIA by the public body.").

At this stage, it remains unknown whether the Town denied petitioner's FOIA rights by incorrectly designating emails as exempt, let alone whether petitioner will prevail on that claim as to a substantial number of withheld emails.  The extent of improper withholding is important.

---

[13] We likewise do not reach whether the mayor or town manager's dissemination of materials protected by Code § 2.2-3705.7(2) waives the exemption.  *See* note 11, *supra*.

Although a plaintiff may "invoke the remedies" of FOIA for even a "single" violation, the plaintiff must "substantially" prevail on the merits of its claims to justify fees. Code § 2.2-3713(D). In *Hill*, for instance, although the trial court found some FOIA violations, the Court affirmed the trial court's decision denying attorney fees. 284 Va. at 314-15. The plaintiff had failed to achieve the "gravamen" of her suit, which sought to undo a school-closure vote that was cast during what she alleged was an illegal meeting. *Id.*

In short, to be entitled to attorney fees here, petitioner must establish that the Town denied petitioner's rights by improperly withholding public records, and petitioner must substantially prevail on that claim. Further proceedings are needed on remand to see if petitioner meets that standard.

CONCLUSION

The trial court erred in permitting the Town to claim the correspondence exemption in Code § 2.2-3705.7(2) for both the mayor and town manager. The court also erred by letting the Town select the representative sample for in camera review without showing how the sample was chosen and why it was representative. Because the trial court must reevaluate whether the emails withheld by the Town are exempt from mandatory disclosure, we remand this case for further proceedings consistent with this opinion.

*Reversed and remanded.*